OPINION OF THE COURT
 

 Bbllacosa, J.
 

 General Obligations Law § 9-103 cloaks landowners with a special immunity against the usual duty to keep designated open spaces reasonably safe for persons who enter to recreate. The key prerequisite favors owners as against users who enter places to engage in statutorily enumerated recreational activities, including by specified motorized vehicle operation. The complementary goals of the statute are to encourage landowners to leave and allow their open lands to be accessible to recreators, the inducement being the special immunity; and to correspondingly withdraw from recreators, as a
 
 quid pro quo,
 
 their usual right to sue an owner for injuries suffered from failure to keep a place reasonably safe.
 

 In this case, plaintiffs were passengers in a four-wheel-drive, multipurpose vehicle capable of recreational off-road use. They drove onto defendants’ property at night purportedly to find a private place to relieve themselves. We conclude that, in this case, factual aspects may be present concerning the recreational intent of the plaintiffs users precluding summary judgment to defendants. Thus, the order of the Appellate Division granting summary judgment to defendants Penn Central Corporation, Norfolk & Western Railway Company, and the Penndel Company, dismissing the complaints based on the statutory immunity should be reversed and the case remitted for further proceedings.
 

 L
 

 In Chautauqua County, within the Town of. Hanover, New York, a cleared right-of-way or access road owned by defen
 
 *524
 
 dont Penn Central runs parallel to defendant Norfolk & Western’s operational railroad line. When Penn Central ceased operation on its line in 1972, it cleared its rail ties from the remaining access road. Norfolk & Western utilizes Penn Central’s right-of-way to access its active rail line and denies any ownership to the right-of-way. Years ago, the two railroad lines crossed Dead Creek on supporting steel bridges a few feet apart and about 15 feet above the water. The inactive Penn Central line across the creek, with rail and ties removed, now consists of only a steel frame crossing; Norfolk’s functioning line crosses the creek with intact ties and track across its bridge. No car bridge has ever spanned Dead Creek.
 

 On June 28, 1985, shortly after midnight, plaintiffs passengers were driving along Allegheny Road from a bar where they had consumed beer. Plaintiffs Farnham and Cobb, along with driver defendant Kittinger, decided to enter the defendants’ right-of-way where it crosses Allegheny Road, apparently to answer nature’s call. Kittinger’s vehicle is an automobile designed with high clearance and four-wheel-drive features to allow the vehicle to maneuver on unpaved surfaces. It proceeded on the access road for about one-half mile. Suddenly, Kittinger noticed the lack of a suitable bridge for an auto crossing over Dead Creek; he defensively turned left. The vehicle hit a large bump, causing it to veer onto Norfolk’s adjacent rail tracks. Ultimately, it flipped over and landed topside in the shallow waters of Dead Creek. Plaintiffs Farnham and Cobb suffered serious injuries and each commenced suit.
 

 Defendants Penn Central, Norfolk & Western and Penndel Company invoked the immunity bar of General Obligations Law § 9-103. Supreme Court rejected their defense in a detailed interpretation of
 
 Iannotti v Consolidated Rail Corp.
 
 (74 NY2d 39). Supreme Court agreed with plaintiffs’ contention that they were not engaged in "motorized vehicle operation for recreational purposes” and found that the abandoned right-of-way was not suitable for recreational activities. As to the issue concerning malicious creation of a trap, Supreme Court stated that "[t]he evidence [also] demonstrates an issue of fact as to 'willful or malicious’ conduct.” Supreme Court denied defendants’ motions for summary judgment.
 

 The Appellate Division reversed and granted summary judgment in favor of the property owners defendants and dis
 
 *525
 
 missed the complaints against them (192 AD2d 1062). This Court granted leave to appeal and we now reverse the order of the Appellate Division, deny the motions for summary judgment and remit the case for further proceedings.
 

 The critical determination for the trial court will be whether the plaintiffs’ activity falls within the enumerated category of "motorized vehicle operation for recreational purposes” as a matter of fact under the circumstances of this case and its distinctive fact pattern (General Obligations Law § 9-103). We conclude that off-road operation of a noninherently recreational, multipurposed motor vehicle does not automatically constitute "motorized vehicle operation for recreational purposes” within the meaning of General Obligations Law § 9-103. Such an extended view would grant landowners immunity farther than the words and intent of the statute prescribe, and farther than the precise
 
 ratio decidendi
 
 of
 
 Iannotti
 
 compels. By like token, however improbable it is to characterize plaintiffs’ conduct in these circumstances as recreational, it is incompatible with the complementary purposes of the statute to grant summary judgment precluding as a matter of law the availability of the statutory immunity for the defendants here.
 

 IL
 

 General Obligations Law § 9-103 grants a special immunity to owners, lessees or occupants from the usual duty to keep places safe. When individuals enter or use the property of another in pursuit of one or more of the specified recreational categories, with or without permission from the owner, they do so at their own peril and without potential recourse to sue for damages based on failure of landowners to maintain usual safekeeping measures (General Obligations Law § 9-103 [1] [a]). That is their part of the statutory bargain, so to speak. Further, the owner has no duty "to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes” (General Obligations Law § 9-103 [1] [a]). These features strike the balance that the Legislature intended to allow or encourage more people to use more accessible land for recreational enjoyment (L 1956, ch 842 [predecessor to General Obligations Law § 9-103]). Forty-eight States have recreational use statutes attempting to strike this balance, with varying results
 
 (see, e.g.,
 
 Comment,
 
 Wisconsin’s Recreational Use Statute: Towards
 
 
 *526
 

 Sharpening the Picture at the Edges,
 
 1991 Wis L Rev 491 [1991]; Butler,
 
 Outdoor Sports and Torts: An Analysis of Utah’s Recreational Use Act,
 
 1988 Utah L Rev 47 [1988]).
 

 In New York, however, the 18 uses enumerated in General Obligations Law § 9-103 are essentially self-explanatory. An owner owes no usual duty to keep lands safe for entry and use by others for "hunting, fishing, organized gleaning as defined in section seventy-one-y of the agriculture and markets law, canoeing, boating, trapping, hiking, cross-country skiing, tobogganing, sledding, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs” (General Obligations Law § 9-103 [1] [a]). Thus, recreational wanderers and wanderers partaking of these enumerated activities are owed none of the usual safekeeping duties imposed on owners
 
 (see, e.g., Clark v State of New York,
 
 178 AD2d 908;
 
 Larini v Biomass Indus.,
 
 918 F2d 1046;
 
 Rains v United States,
 
 752 F Supp 71;
 
 Reid v Kawasaki Motors Corp.,
 
 189 AD2d 954;
 
 Phillips v Baird,
 
 156 AD2d 998,
 
 lv denied
 
 75 NY2d 711;
 
 Wiggs v Panzer,
 
 187 AD2d 504;
 
 Dean v Glens Falls Country Club,
 
 170 AD2d 798;
 
 Sega v State of New York,
 
 60 NY2d 183). Liability against owners is foreclosed in these prescribed recreational instances by operation of the statute.
 

 Unlike its specific counterparts, the more generalized use category of "motorized vehicle operation for recreational purposes” is somewhat more ambiguous or nuanced. We believe that motorized vehicles which are inherently recreational, like motorcycles, minibikes and all-terrain vehicles (L 1971, ch 343), are largely free of ambiguity under the statute. As we said in
 
 Iannotti,
 
 "[ojbviously, that the bike was being used for transportation would not mean that its use was not also recreational”
 
 (Iannotti v Consolidated Rail Corp.,
 
 74 NY2d 39, 47,
 
 supra).
 

 Many automobiles, on the other hand, in today’s marketplace have been developed as multipurpose motorized vehicles for overlapping family, work and recreation. These vehicles are engineered with the capacity to leave paved road surfaces and venture up mountains, into woods and across streams. The person who uses such a vehicle may simply be intrigued with the four-wheel-drive capacity for purposes of handling snow and ice conditions, large pot holes or exciting, untraversed side-road vistas. The nature and fast-changing engineer
 
 *527
 
 ing and marketing of such vehicles cannot, however, automatically shift these vehicles into the inherently recreational type so plainly covered by General Obligations Law § 9-103. Thus, persons pulling off the road in such noninherently recreational vehicles simply for personal reasons should not be deemed to have automatically triggered the statute’s immunity framework. They are not the intended use beneficiaries who, by operation of law, give up their common-law negligent injury protections. Nor are persons duty-bound to go upon land, such as emergency responding personnel, no matter what type of vehicles or instrumentalities they utilize, in fulfillment of inherently nonrecreational responsibilities.
 

 For the immunity statute to apply in the noninherently recreational motorized vehicles context, there must be a showing of particularized recreational use. Such a showing may be made by reference to one of the enumerated activities or a specific showing of motor vehicle operation for recreational purposes within the contemplation of the statute. The use should not have to be exclusively recreational, but recreational it must be for the users to forfeit their common-law rights and for the owners to acquire the protective immunity cloak of the statute. This aspect, thus, injects a difficult blend of ambiguities and competing interests for the application of the statute in these circumstances.
 

 We conclude, therefore, that the current range of four-wheel-drive, multipurpose operational vehicles that can be used for access into open properties do not garner automatic immunity to landowners unless the user is shown to have some recreating purpose. In situations such as are presented here, the courts will have to delve into the intent of the users. That is subjective. Where the user is shown to be involved in a statutorily contemplated or enumerated recreational purpose and activity
 
 (see, Messinger v Festa,
 
 117 AD2d 784), the objective part of the test, immunity is bestowed by operation of the statute. If, on the other hand, the user enters the property for emergency purposes, or for other nonrecreational purposes, and not for prescribed recreational purposes, then the user has demonstrated a threshold nonrecreational use. That withholds from the landowner an automatic statutory immunity. It does not, of course, create or justify liability in and of itself.
 

 We believe that the need to explore for recreational intent is particularly relevant when uses are associated with nonin
 
 *528
 
 herently recreational motor vehicles
 
 (see, Gardner v Owasco Riv. Ry.,
 
 142 AD2d 61,
 
 lv denied
 
 74 NY2d 606). Since
 
 Iannotti
 
 involved the use of an inherently recreational vehicle — a motorized dirt bike — no exploration of recreational intent was necessary. As to such vehicles, motorcycles and all-terrain vehicles, the subjective intent of the parties remains irrelevant, since those motor vehicles by their nature are designed predominantly for recreational purposes. Additionally, the Legislature, in adopting in 1971 the new category of "motorized vehicle operation for recreational purposes,” made plain its intention to include particularly the following inherently recreational vehicles: "motorcycle, motorbike, mini-bike or other type of mechanical device propelled by a motor” like three- and four-wheel all-terrain vehicles (Mem of Member of Assembly Betros, Bill Jacket, L 1971, ch 343, at 24-25 ["Purpose of Bill”]). We note that the more broadly embracive language in
 
 Iannotti
 
 in this respect, suggesting that recreational intent is irrelevant as to all types of vehicles, whether inherently recreational or not, should not be followed. We conclude the rule should not emerge so broadly as applied in light of the words and history of the statute and the governing principles and purpose as illuminated by the discrete fact developments and impact of the rules in this case. The Court is now satisfied that the Legislature did not intend an immunity sweep broader than we have now construed, albeit recognizing this is less than
 
 Iannotti
 
 seemed to promise. The Legislature may exercise its policy choice to modify, limit or expand this special immunity if it wishes in light of the empirical data, the evolution of the precedents and the competing policy objectives of the legislation.
 

 We conclude that in the procedural posture and unusual circumstances of this case we need not decide whether suitability of property for a particular recreational use is generally an independent ingredient governing the availability of immunity under General Obligations Law § 9-103. In light of the permutations of consequences flowing from the diverse views expressed in
 
 Iannotti
 
 itself on suitability, which produced different applications by the two prior courts, we deem it prudent to decide no more than to deny defendants’ motions for summary judgment — the only aspect before us — for the reasons we have given.
 

 m.
 

 Also before us is a question of limitation in the scope of General Obligations Law § 9-103. It explicitly retains exposure
 
 *529
 
 to liability for willful or malicious failure to warn against a dangerous condition, use, structure or activity (General Obligations Law § 9-103 [2] [a]). However, it is the "plaintiff [who] must prove that the defendant willfully or maliciously failed to guard or to warn against a dangerous condition, use, structure, or activity[, while t]he defendant’s negligence, if any, is immaterial”
 
 (Sega v State of New York,
 
 60 NY2d 183, 192,
 
 supra).
 
 Thus, while generally no duty to warn obtains, there is no automatic immunity from liability upon a showing of "willful or malicious” failure to warn. Inherent in this preserved exposure to suit, though, is a high-threshold demonstration by the injured party to show willful intent by the alleged wrongdoer. General Obligations Law § 9-103 (2) (a) in this regard must be viewed as an exception to the general immunity from liability. As an exception, it should not be read so expansively as to promote question-of-fact inquiries as a general rule. The exception "must be strictly construed in order that the major policy underlying the legislation itself is not defeated,” with all doubts resolved in favor of the general provision rather than the exception (McKinney’s Cons Laws of NY, Book 1, Statutes § 213;
 
 see also, Matter of Charles,
 
 279 App Div 741,
 
 affd
 
 304 NY 776).
 

 Strongly illustrative of this application are the few available precedents. In
 
 Cutway v State of New York
 
 and
 
 Sega v State of New York
 
 (together, at 60 NY2d 183,
 
 supra),
 
 this Court found that the owners’ conduct was not willful or malicious towards either a hiker leaning against a guardrail that collapsed, or a three-wheel motorized vehicle operator who struck a cable strung across the roadway. Nor did liability attach to the owner of a railroad access road on which a neighbor had built an ice barrier to slow vehicles that injured plaintiff
 
 (Gardner v Owasco Riv. Ry.,
 
 142 AD2d 61, 65,
 
 supra).
 
 An owner’s actions in creating a dangerous condition must be based on a showing of particular, not inferred, malice and willfulness, and not on simple negligence
 
 (Bowles v Kawasaki Motor Corp.,
 
 179 AD2d 299;
 
 Wilkins v State of New York,
 
 165 AD2d 514;
 
 Fenton v Consolidated Edison Co.,
 
 165 AD2d 121,
 
 lv denied
 
 78 NY2d 856).
 

 IV.
 

 Applying our rationale to the record before us, we conclude that a fact question remains as to the plaintiffs
 
 *530
 
 users’ recreational intent, if any here, within the meaning of the statute during their sojourn down the rail access road to find a private place to urinate. If the owners can demonstrate some recreational purpose, within the objective features of the statute, the owners are entitled to dismissal under the immunity statute. If the plaintiffs’ purpose was entirely nonrecreational activity as understood under the immunity statute, then General Obligations Law § 9-103 does not save the owners from lawsuit exposure. In such instances, liability will be determined in accordance with the dictates of New York’s customary property owner principles
 
 (see, Basso v Miller,
 
 40 NY2d 233).
 

 We are also satisfied that plaintiffs’ claim of willful and malicious conduct was correctly rejected by the Appellate Division under our standard prevailing precedents and authorities. Finally, while the Appellate Division’s order must be reversed for the reasons we have given, we refrain from addressing its discussion of the suitability question in this case, and no inferences one way or the other should be drawn in that regard.
 

 Accordingly, in each action, the order of the Appellate Division should be reversed, with costs, and the defendants’ motions for summary judgment denied.
 

 Chief Judge Kaye and Judges Simons, Smith, Levine and Ciparick concur; Judge Titone taking no part.
 

 In each action, order reversed, etc.