[711 NYS2d 77]

PHILIP A. DEL COSTELLO et al., Respondents, v DELAWARE AND HUDSON RAILWAY COMPANY, INC., Appellant.

Third Department, July 20, 2000

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C.,* Albany (*Scott A. Barbour* of counsel), for appellant.

*Horigan, Horigan & Lombardo, P. C.,* Amsterdam (*Derek L. Hayden* of counsel), for respondents.

**OPINION OF THE COURT**

CARPINELLO, J.

On the afternoon of January 15, 1994, plaintiff Philip A. Del Costello (hereinafter plaintiff) was snowmobiling with several companions upon a right-of-way adjacent to railroad tracks owned by defendant when his snowmobile collided with a train. The train was also owned by defendant. According to deposition testimony of the engineer operating the train that day, the northbound snowmobilers were between 50 and 100 yards away when he first observed them. At this time the train, also northbound, was traveling 30 miles per hour and its whistle was blowing since it had just passed a railroad crossing. Thus, according to the engineer, he simply continued to blow the whistle as he passed the line of snowmobilers, a period he estimated to be between 1½ and 2 minutes.

The precise circumstances surrounding the collision itself are in dispute. Defendant's engineer testified that plaintiff, who had been traveling parallel to the tracks as the train approached him from behind, made a sudden swerve in front of the train at which point the engineer immediately applied the brakes and put the train in emergency mode, to no avail. Prior to impact, according to the engineer, plaintiff had been snowmobiling 10 feet away from the train itself. Plaintiff, on the other hand, testified that he was traveling north parallel with the railroad tracks when he suddenly "felt something hit [him] from behind," which turned out to be the northbound train. Plaintiff denied hearing or seeing the train at any time prior to impact. Moreover, according to plaintiff, he had not changed the direction or path of the snowmobile in any manner immediately prior to impact but was merely traveling in the path of previously made snowmobile tracks. This was confirmed by a fellow snowmobiler traveling directly behind plaintiff who averred that he did not see plaintiff swerve in front of the train prior to the accident.

There is also a factual dispute concerning whether the engineer blew the bells and whistles on the train in an attempt to warn plaintiff. The engineer, as well as the train's conductor, unequivocally testified at examinations before trial that the whistles and bells were being operated for the entire period of time as the train approached and passed the snowmobilers. Plaintiff, as well as the snowmobiler traveling directly behind

him, each swore that he did not hear bells or whistles prior to or at the time of impact. In this action commenced by plaintiff, and his wife derivatively, defendant appeals from an order denying its motion for summary judgment.

The important legal question before this Court is whether defendant is immune from liability under General Obligations Law § 9-103 because the collision occurred on its property at a time when plaintiff was engaging in a recreational activity. Relying on *Iannotti v Consolidated Rail Corp.* (74 NY2d 39), defendant argues that General Obligations Law § 9-103 should be applied in this case because plaintiff was engaged in one of the enumerated activities identified in the statute on land which is suitable for such activity, an argument that is facially appealing. While *Iannotti* certainly stands for the general proposition that railroad properties are not removed from the scope of General Obligations Law § 9-103 merely because they are in active commercial use, the Court of Appeals did not address the precise legal issue now before this Court, namely, whether a collision between a recreational vehicle and a landowner's vehicle shields the landowner from any and all liability.

The Second Department has addressed a nearly identical issue and rejected a railroad's contention that the statute shielded it from liability arising out of its operation of a train (*see, Lee v Long Is. R. R.*, 204 AD2d 280). In *Lee v Long Is. R. R.* (*supra*), the plaintiff's decedent was struck by a train while walking along a railroad bridge owned by the defendant railroad. There, like here, an action ensued to recover for personal injuries as a result of allegations that the *train* was negligently operated. The Second Department determined that the allegations of negligence did not fall within the ambit of General Obligations Law § 9-103 since the plaintiff had not alleged the existence of any defect or dangerous condition or activity on the premises itself but rather based her theory of liability on the negligent operation of the train by the railroad's engineer (*see, id.*, at 281-282). The Court held that "General Obligations Law § 9-103 does not provide for the limitation of liability where the owner's *own negligence* in the operation of a train or vehicle causes injury, and no discernable purpose of the statute would be advanced by such an expansion of the protection which it affords to owners and occupiers of land" (*id.*, at 282 [emphasis supplied]).

Defendant argues that *Lee* should not be followed by this Court and urges that we instead rely on a decision rendered by the United States District Court in the Southern District of

New York, *Keomanivong v Metro-North Commuter R. R.* (1995 WL 258190, 1995 US Dist LEXIS 5822 [SD NY, May 2, 1995, McKenna, J.]). In *Keomanivong*, the plaintiff, en route to go fishing on the banks of the Hudson River, was walking northbound alongside railroad tracks when he was struck by the defendant's northbound train (*see, id.*, 1995 WL, at *1, 1995 US Dist LEXIS, at *1). He sued to recover for the negligent operation of the train and supervision over the premises, and the defendant's motion for summary judgment premised upon General Obligations Law § 9-103 was granted. The court found that General Obligations Law § 9-103 "encompasses not only injuries deriving from physical conditions on a piece of property, but also from hazardous uses or activities on such property" (*id.*, 1995 WL, at *3, 1995 US Dist LEXIS, at *7). Faced with these divergent holdings, we turn to our case.

To be sure, this case arises out of a collision between two vehicles, albeit on recreational land, and the allegations of liability hinge *solely* on the manner in which the vehicles were being operated, particularly the train (*compare, Lovell v Chesapeake & Ohio R. R. Co.*, 457 F2d 1009). The recreational use statute was originally enacted as part of the Conservation Law (*see*, L 1956, ch 842 [former Conservation Law § 370]) and was intended to address a problem in the management and use of wildlife resources in this State, namely, a trend by landowners toward the posting of private premises so as to exclude persons entering for hunting, fishing or trapping (*see*, Mem of Joint Legis Comm on Rev of Conservation Law, 1956 McKinney's Session Laws of NY, at 1943). Indeed, the legislative history speaks in terms of keeping *premises* safe and warning of hazardous conditions in the terrain. As described by the Court of Appeals, the statute "grants a special immunity to owners * * * from the usual duty to keep *places* safe" (*Farnham v Kittinger*, 83 NY2d 520, 525 [emphasis supplied]).

There is no indication in the language of General Obligations Law § 9-103 itself that the Legislature intended to immunize an owner of recreational property from his or her own negligent operation of a vehicle on such property (*compare, State ex rel. Tucker v District Ct.*, 155 Mont 202, 468 P2d 773).* Furthermore, the legislative history of the statute reveals that it was never intended to relieve a landowner from affirmative

---

* While reference to the final clause of General Obligations Law § 9-103 (1) (a), which provides that there is no duty "to give warning of any hazardous condition or use of or structure or activity on such premises," at first glance supports defendant's construction of the statute as immunizing it

acts of negligence. As noted in the following memorandum: "The distinction between affirmative acts of negligence (which would result in liability) and mere failure to use care, to keep premises safe for entry by a licensee or to warn of hazards, is significant for this bill, *which deals only with the duty to keep premises safe or warn of hazards. The bill would have no effect on liability of either an owner, lessee or occupant, or of a third party carrying on some activity on the premises, for acts of affirmative negligence.* That liability does not arise from a duty to keep premises safe, or to warn of danger, and does not depend on a finding that the person entering was an invitee, or on rules as to the duty of care owed to an invitee" (Mem of Exec Secretary and Dir of Research of Law Rev Commn, Bill Jacket, L 1956, ch 842, at 30 [emphasis supplied]).

In 1999, the Fourth Department reaffirmed that General Obligations Law § 9-103 "does not immunize the affirmative negligence of a landowner" (*Olson v Brunner*, 261 AD2d 922, 923-924, *lv denied* 94 NY2d 759; *see, Sauberan v Ohl*, 239 AD2d 891). In *Olson v Brunner* (*supra*), a hunter was trampled to death by the landowner's bull while hunting on farm property. Although the Court ultimately determined that General Obligations Law § 9-103 immunized the landowner from liability, its holding was based on the fact that the only arguable allegation of affirmative negligence asserted against the landowner—that he allowed his bull to freely roam upon the property—was not borne out in the record (*see, id.,* at 923-924). Here, in contrast, plaintiff has submitted proof raising at least an issue of fact concerning whether defendant's engineer was negligent in his operation of the train that afternoon.

Thus, upon our review of General Obligations Law § 9-103, as well as its legislative history, we agree with the Second Department's conclusion that an owner of recreational land is not immune from liability under the statute arising out of the manner in which it or one of its employees operates a vehicle on that land when the allegations of negligence stem solely from the manner of operation of that vehicle. Said differently, the statute does not immunize a landowner from its separate and distinct duty to operate a vehicle on its recreational property with reasonable care (*see generally, Scott v Wright*, 486 NW2d 40 [Iowa]). Furthermore, like the Second Department, we do not believe that the broad application of the statute as advanced by defendant would serve the public purpose

from liability in this case, we are ultimately unpersuaded given our review of the statute's legislative history.

envisioned by the Legislature. Though clearly focused on reducing a recreational landowner's liability, it was also enacted "to allow or encourage more people to use more accessible land for recreational enjoyment" (*Farnham v Kittinger, supra,* at 525). The public's incentive to use recreational land would be diminished if users were to be left without recourse in the event of a landowner's negligent operation of any vehicle on that property.

To be sure, denial of immunity under General Obligations Law § 9-103 does not result in the automatic imposition of liability against defendant (*see, Bragg v Genesee County Agric. Socy.,* 84 NY2d 544, 551). With respect to defendant's contention that it is entitled to summary judgment under traditional negligence principles, however, we find that sufficient factual issues have been raised. Viewing the facts in a light most favorable to plaintiffs and drawing all reasonable inferences in their favor as the nonmoving parties, this Court must accept as true that plaintiff never made a sudden turn into the path of the train, as recounted by the engineer (*compare, Guller v Consolidated Rail Corp.,* 242 AD2d 283 [the plaintiff leapt into path of train when it was five or 10 feet away]). Rather, it must be inferred that plaintiff had been snowmobiling in the direct path of the train the entire time it was approaching him from behind (there being no allegation that the train derailed) and that he never saw or heard the train at any time prior to the impact. Under this version of events, even assuming that plaintiffs failed to properly refute defendant's showing that the bells and whistles were activated by the engineer prior to impact (*see, Foley v New York Cent. & Hudson Riv. R. R. Co.,* 197 NY 430), a jury might conclude that the engineer had an obligation to slow or stop the train at some point prior to impact because plaintiff could not "remove himself from harm's way" (*Alba v Long Is. R. R.,* 204 AD2d 143, 144; *see generally, Raspente v National R. R. Passenger Corp.,* 111 F3d 239).

MERCURE, J. P., PETERS, GRAFFEO and MUGGLIN, JJ., concur.

Ordered that the order is affirmed, with costs.