OPINION OF THE COURT
Philip J. Patti, J.
This action arose at approximately 8:00 a.m. on July 29, 1999. Claimant was riding a bicycle on the bicycle path alongside the New York State Barge Canal in Spencerport, New York, and struck a mooring cable that, it is alleged, had been stretched across all or at least part of the path by defendants’ employees.[1] At the time of the incident, those employees were engaged in routine maintenance of the canal, *678 dredging or cleaning it by use of a specially equipped boat. This boat is not self-propelled but is moved along the canal by use of swing cables that are attached to the canal banks. Apparently, it was one of these cables that claimant’s bicycle struck.
A notice of intention was served in October 1999, and the claim was filed and served in April 2000. In the answer, defendants alleged, as their third affirmative defense, that claimant’s notice of intention failed to sufficiently describe the location of the incident and therefore was invalid pursuant to section 11 (b) of the Court of Claims Act. As their sixth affirmative defense, defendants asserted that the provisions of General Obligations Law § 9-103 established the appropriate standard of care and consequently barred the claim. Claimant has moved to strike these two affirmative defenses. Defendants have cross-moved for summary judgment dismissing the claim on the grounds that the notice of intention is invalid, that General Obligations Law § 9-103 bars the claim, and that the claim is further barred by the provisions of section 120 of the Canal Law, an issue raised in their seventh affirmative defense.
Court of Claims Act § 11 (b): Adequacy of the Notice of Intention
In her notice of intention, claimant set forth the time and date on which the accident occurred and stated that it occurred “on a canal bicycle path located along the Erie Canal in Spencerport, County of Monroe” and was caused by “a cable stretched across the bicycle path.”
The purpose of a notice of intention is “to provide the State with fair and timely notice by bringing the general nature of the claim to its attention” (Schwartzberg v State of New York, 121 Misc 2d 1095, 1099-1100, affd 98 AD2d 902; see also, Schmidt v State of New York, 279 AD2d 62; Williams v State of New York, 77 Misc 2d 396). Because a notice of intention is not a pleading, it is not to be scrutinized under the standards applicable to pleadings (Murray v State of New York, 202 App Div 597; Epps v State of New York, 199 AD2d 914), but it must contain some meaningful reference to the defect or wrongful actions by State officials that will allegedly give rise to liability (Grumet v State of New York, 256 AD2d 441), so that the State will have an opportunity to investigate the facts and determine its potential liability (Heisler v State of New York, 78 AD2d 767). Information about the location of an incident is sufficient if it makes such investigation possible (Rhodes v State of New *679 York, 245 AD2d 791; Grande v State of New York, 160 Misc 2d 383).
Claimant’s notice of intention does not specifically identify the accident site and, depending on the length of the bicycle path in question (information that is not provided in the papers before us), merely reciting that general location could be insufficient to allow for investigation of the facts underlying the potential claim. On the other hand, the condition described in the notice of intention — a cable stretched across the bicycle path along a defined section of the Erie Canal — is certainly an unusual one and, moreover, a condition that, if there is to be any liability on the part of the State, must have been created by employees or agents of the State itself. The situation is similar, therefore, to the one presented in Cannon v State of New York (163 Misc 2d 623, 627), where the injury occurred in an enclosed building under the exclusive control of the State. It was held in that case that “[a] notice of intention which provides a location specific enough to [permit the State to] locate its own employee directly responsible for the building, satisfies the requirement of section 11 to set forth the place where the claim arose.” (Id.) The information in claimant’s notice of intention was sufficiently specific to permit defendants’ attorneys to identify the relevant employee to question and, through him, to learn enough about the accident to perform an initial investigation. In fact, according to claimant, the relevant employee — William Clifford, Floating Plan Supervisor of the New York State Canal Corporation — was one of the individuals who was present at the location overseeing the dredging operation and one of the ones who came to her aid immediately after the accident. I determine that, in these specific circumstances, the notice of intention contained sufficient information to permit a meaningful investigation of the allegations, and thus claimant’s motion to strike defendants’ third affirmative defense will be granted.
General Obligations Law § 9-103: Standard of Care Applicable to Recreational Lands
General Obligations Law § 9-103, which is raised in defendants’ sixth affirmative defense, provides that owners, lessees or occupants of property do not owe a duty to keep their premises safe “for entry or use by others” for certain enumerated recreational activities which include hunting, fishing and bicycling. (General Obligations Law § 9-103 [1] [a].) Those who own or occupy property are also not required to give *680 warning of any hazardous condition or activity on the premises to those entering their land for such purposes. As a general proposition, this statute’s protection is available if the defendant landowner can establish that “(1) the plaintiff is engaged in one of the activities identified in section 9-103 and (2) the plaintiff is recreating on land suitable for that activity” (Bragg v Genesee County Agric. Socy., 84 NY2d 544, 551-552). In the instant case, claimant was engaged in one of the enumerated recreational activities and was on property that was apparently suitable for such activity, making General Obligations Law § 9-103 presumptively applicable.
Subdivision (2) (a) of the statute provides an exception to this immunity “for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.”[2] This exception has been interpreted restrictively, and to take advantage of it an injured party must demonstrate an “intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result” (Scuderi v Niagara Mohawk Power Corp., 243 AD2d 1049, 1050; see also, Matter of Gibbs v D’Angelo, 265 AD2d 833). Claimant does not allege that defendants engaged in willful or malicious conduct in the instant situation, but this provision is relevant to another argument raised by claimant (see discussion of the “Affirmative Action” exception below).
“Ferres” Exception: A judicially recognized exception to the immunity provided by General Obligations Law § 9-103 removes municipalities and other public entities from the statute’s protection with respect to their operation and maintenance of supervised public parks and recreational facilities (Ferres v City of New Rochelle, 68 NY2d 446, 449).[3] Determining whether an area that is open for recreational use is suf *681 ficiently “supervised” so as to fall outside application of the statute can be quite problematic, and it is essential that any such determination be based on consideration of the underlying purpose of the statute: “to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities” (id. at 451). Indeed, the Ferres exception exists because, according to the Court of Appeals, the statute’s intended purpose would not be served where the land is already open for supervised recreational use (Sena v Town of Greenfield, 91 NY2d 611, 616; see also, Iannotti v Consolidated Rail Corp., 74 NY2d 39). Thus, to determine whether the Ferres exception applies, the effect of any ruling on the future use of the land must be considered by the court (see, McCarthy v New York State Canal Corp., 244 AD2d 57, 59, lv denied 92 NY2d 815 [“without the additional inducement of liability protection, the Canal Corporation and the Thruway Authority would no doubt feel constrained to end the public’s use of the terminal wall for fishing”]; Bowles v Kawasaki Motor Corp. USA, 179 AD2d 299 [“There is no evidence that either the Town or the landowners would have been willing to open these lands but for the protection of the statute”]; O’Keefe v State of New York, 104 AD2d 43, 47 [“Obviously, there is no need to encourage a governmental entity which builds, operates and maintains a public recreational complex to open it for public use”]). Other factors to be considered in deciding if this exception applies to a particular situation include whether the owner was aware of the recreational activity to which the property was put, whether it formally encouraged or permitted such activity, whether it operated and maintained the property for such use (Clark v State of New York, 178 AD2d 908, supra; see also, Perrott v City of Troy, 261 AD2d 29; Powderly v Colgate Univ., 248 AD2d 365), and whether it made any improvements to the property in order to facilitate such use (Sena v Town of Greenfield, 91 NY2d 611, supra).
Claimant argues that the situation presented here falls within the Ferres exception because the land had been improved to contain a designated path for bikers and walkers; because there were signs along the path indicating it was to be used for those activities; because bicycle racks had been installed for use by the public; and because, upon information *682 and belief, the path was maintained by defendants and monitored for dangerous conditions. Defendants contend that the Ferres exception does not apply because, according to the Canal Corporation’s Director of Maintenance and Operations, the area alongside the canal towpaths is not staffed or supervised and because, in the opinion of this official, these lands would not be made available to the public for recreational use if liability could result from normal maintenance activities.
Both parties cite to a recent decision in a factually similar claim, Chapman v State of New York (Ct Cl, Mar. 19, 2001, Corbett, J., Claim No. 97828, Motion Nos. M-61413, M-61575).[4] In that case, a bicyclist was injured when he struck a tree lying across a designated bicycle path located in a canal towpath. The affirmative defense based on General Obligations Law § 9-103 was stricken, and claimant urges a similar result here; defendants disagree with the result in that decision and argue that the situation presented in Chapman is distinguishable, on its facts, from the one presented here, since it involved a “paved section of the towpath in a suburban area.” (Gelormini Reply Affidavit 21).
Chapman provides an excellent review of the reasons behind the development of the Ferres exception to General Obligations Law § 9-103, as well as an excellent example of the difficulties encountered in determining whether a specific recreational area qualifies for this exception. While both that claim and the one presented here involve a designated bicycle path in the area alongside one of the State canals, there is sufficient difference between the two situations, and between the information provided to the courts, that I do not consider Chapman to control in this instance, at least on the present record. In Chapman, there was considerable evidence — derived from affidavits, several depositions, and canal maintenance records — presented for the court’s consideration, and that evidence established that the bicycle path in question was paved, that maps and brochures were made available to members of the public to encourage recreational use of the area, and, perhaps most significantly, that employees of the Canal Corporation routinely monitored and maintained the pathway to prevent precisely the sort of hazard that caused that claimant’s injury. As Judge Corbett sagely noted, in light of the need to balance public safety against the goal of General Obligations Law § 9-103, the situation presented in Chapman represented a “close case” and *683 any ruling with respect to that one specific segment of the canal system’s towpath area “need not be extended to encompass the entire 25,000 acres of canal lands.” In the instant case, I have been given a good deal less specific information about defendants’ involvement in and management of the bicycle path near Spencerport and, while not making a final determination on the issue, I conclude that at the present time there is simply not sufficient information from which to make a definitive ruling on whether the Ferres exception applies to the property in question.
“Affirmative Action” Exception: Claimant argues that there is yet another exception to the application of General Obligations Law § 9-103 or, more accurately, that there are certain fact patterns that take a landowner’s activity outside the scope of the statute. If claimant is correct, owners and other occupants of property are liable under traditional negligence principles, not the lower standard of care set forth in the statute, for their own “affirmative acts,” even when the injured party is engaging in recreational activity on land suitable for that purpose. Claimant characterizes attaching a cable to the bank of the canal and thereby blocking a bicycle path as an “affirmative” action on the part of the State — as compared, for example, to failing to warn of a natural hazard or failing to clean away fallen branches — and argues that when landowners take such steps without putting up appropriate warnings or otherwise guarding against harm, they cannot take advantage of the statute’s protection.
Most courts have taken the view that before any type of negligence — whether it be a passive omission to warn or an affirmative creation of a danger — can lead to liability in these situations, it must rise to the level of willfulness or malice and thus trigger the exception found in subdivision (2) (a) of the statute. Under this view, “the mere fact that the owner or occupant creates the condition is not determinative of whether it has willfully failed to warn or guard against it” (Bowles v Kawasaki Motor Corp. USA, 179 AD2d 299, 303 [4th Dept 1992], supra, rearg denied 587 NYS2d 866 [logs left protruding onto snowmobile trail after repair to a culvert]; see also, Bragg v Genesee County Agric. Socy., 84 NY2d 544, supra [excavating in area known to be used by motorcyclists]; Cutway v State of New York, 60 NY2d 183, 192 [decided together with Sega v State of New York, 60 NY2d 183] [cable placed across roadway and no repair of warning signs attached to it]; Scuderi v Niagara Mohawk Power Corp., 243 AD2d 1049 [cable stretched *684 across property used by snowmobilers]; Hillman v Penn Cent. Corp., 204 AD2d 902 [removal of railroad berm which created a gully]; Wilkins v State of New York, 165 AD2d 514, supra [3d Dept 1991] [chain placed across access road]; Fenton v Consolidated Edison Co., 165 AD2d 121 [1st Dept 1991], lv denied 78 NY2d 856 [ditch cut across path used by motorbikes]; Gardner v Owasco Riv. Ry., 142 AD2d 61, 65 [failure to remove or warn of a barrier erected by a third party]). As summed up by the Court of Appeals, in situations where General Obligations Law § 9-103 applies, “[a]n owner’s actions in creating a dangerous condition must be based on a showing of particular, not inferred, malice and willfulness, and not on simple negligence” (Farnham v Kittinger, 83 NY2d 520, 529, citing Bowles, supra; Wilkins, supra; Fenton, supra).
Claimant points, however, to several cases in which, he argues, General Obligations Law § 9-103 has been held inapplicable because the injury was caused by an “affirmative act” on the part of the owner or occupant of the land. In Del Costello v Delaware & Hudson Ry. Co. (274 AD2d 19 [3d Dept 2000]), in which a snowmobiler was struck by a train operated by the landowner, it was held that General Obligations Law § 9-103 did not apply.
“There is no indication in the language of General Obligations Law § 9-103 itself that the Legislature intended to immunize an owner of recreational property from his or her own negligent operation of a vehicle on such property. Furthermore, the legislative history of the statute reveals that it was never intended to relieve a landowner from affirmative acts of negligence.” (Id. at 22-23 [citation omitted].)
The holding in this case was based, in part, on the decision in Lee v Long Is. R.R. (204 AD2d 280 [2d Dept 1994]), where a fisherman walking along a railroad track was struck by one of the landowner’s trains and the statute was held to be inapplicable because the sole allegation of liability was that the defendants’ engineer “negligently (or willfully or maliciously) operated the train.” (Id. at 282.) The Court stated:
“[T]he purported liability of the defendants is not premised upon any condition on the property, nor does it even rely upon their status as owners or occupiers of the railroad bridge * * * Inasmuch as General Obligations Law § 9-103 does not provide for the limitation or liability where the owner’s own *685 negligence in the operation of a train or vehicle causes injury, and no discernible purpose of the statute would be advanced by such an expansion of the protection which it affords to owners and occupiers of land, we find that the limitation of liability set forth in the statute is inapplicable to the circumstances of this case.” (Id.)
Claimant also refers to a 1999 Fourth Department decision in which the Court observed that General Obligations Law § 9-103 “does not immunize the affirmative negligence of a landowner” (Olson v Brunner, 261 AD2d 922, 923-924, lv denied 94 NY2d 759). In that case, a hunter was killed by a bull belonging to the landowning farmer, and General Obligations Law § 9-103 was held to apply. In response, however, to the argument that the injury was caused not by a condition of the premises but rather by the farmer’s action in allowing the bull to run free, the Court observed that that was not, in fact, the case since the animal had been confined to a fenced area. Nevertheless, the decision implied that if the landowner had been negligent in creating the danger — i.e., if he had allowed the bull to roam without restraint — there could have been a recovery. Cited as authority for this implied holding were Lee v Long Is. R.R. (supra), which is discussed above, and Sauberan v Ohl (239 AD2d 891 [4th Dept 1997]).
In Sauberan, the landowner’s alleged negligent act — telling someone to shoot at a target that could not be seen — was entirely unrelated to any dangerous condition on the property or to the actor’s status as landowner. The tortfeasor in that case could just as easily been standing on someone else’s property, or on public land, when he gave his ill-advised direction. In the other three cases, however, the activity of the landlord was certainly in some fashion related to the land itself; the same entity that operated the trains owned the land on which the trains were traveling, and the farmer/owner was pasturing the bull on his own property.
It is difficult to articulate the characteristics that distinguish the actions of the landowners in Del Costello, Lee, and Olson from those in some of the other cases cited above, such as those who placed cables across roads or pathways, left logs on a traveled way, or failed to remove hazards left in place by another. To say the statute does not apply to certain acts simply because they are “affirmative” in nature does not answer the question or provide enough guidance, particularly in view of the Court of Appeals statement that “particular * * * malice and willful *686 ness” must be shown, not simple negligence, before the protection of General Obligations Law § 9-103 is removed, even where injury was caused by “[a]n owner’s actions in creating a dangerous condition” (Farnham v Kittinger, 83 NY2d 520, 529, supra). Likewise, to say that the purpose of the statute is not met if the owners in Del Costello, Lee, and Olson are held to a standard of ordinary negligence overlooks the possibility — even probability — that landowners who operate trains or other vehicles on their property or who house dangerous animals on their property will choose to close their land to public recreational activity if they are held to a higher standard of care by anyone who chooses to enter it for recreational purposes.
The distinguishing feature may be that the “things” that caused harm in Del Costello, Lee, and Olson — the trains or the bull — are not permanently attached to the land but are capable of independent motion. If that is the case, the question in this case would be whether the mooring cable is to be considered a static feature of the land at the moment it was struck by claimant or something that is incident to movement of the cleaning dredge and whether the dredge could be considered a “vehicle” of sorts. On the other hand, it may be that the landowners in Del Costello, Lee, and, by inference, Olson were subject to a higher standard of care because their activity — operating a train, controlling a dangerous animal — was so inherently dangerous that even mere negligence in connection with such activity can be considered “willful” or “wanton” because of the increased risks involved. Under this view, liability would ensue not because of any common-law exception but by operation of subdivision (2) (a) of the statute. If this is the distinguishing feature, then we must question whether the operation of a cleaning dredge, including placement of its anchoring cables, would fall into this inherently dangerous category. I acknowledge, however, that none of these three cases have explained their holding in this fashion.
In both Del Costello and Olson, the appellate courts refer to the statute’s legislative background and to a statement by the Executive Secretary and Director of Research of the Law Revision Commission as supporting the asserted exception for “affirmative” acts.
“The distinction between affirmative acts of negligence (which would result in liability) and mere failure to use care, to keep premises safe for entry by a licensee or to warn of hazards, is significant for this bill, which deals only with the duty to keep *687 premises safe or warn of hazards. The bill would have no effect on liability of either an owner, lessee or occupant, or of a third party carrying on some activity on the premises, for acts of affirmative negligence. That liability does not arise from a duty to keep premises safe, or to warn of danger, and does not depend on a finding that the person entering was an invitee, or on rules as to the duty of care owed to an invitee.” (Mem of NY Law Rev Commn, Bill Jacket, L 1956, ch 842, at 30 [emphasis supplied].)
In 1956, when the predecessor to General Obligations Law § 9-103 (former Conservation Law § 370) was enacted, landowners owed different levels of duty to different classes of persons who entered their property. The only duty owed to a trespasser was to refrain from willfully or wantonly injuring him (Scurti v City of New York, 40 NY2d 433, 439, citing Johnson v New York Cent. & Hudson Riv. R.R. Co., 173 NY 79, 82); the duty owed to a licensee was to disclose dangerous defects known to defendant and not likely to be discovered by plaintiff (Krause v Alper, 4 NY2d 518, 521); and the duty owed to an invitee was the duty of reasonable care, i.e., “reasonable prudence and care to keep their property in such a condition that those who go there shall not be unreasonably and unnecessarily exposed to danger” (Flynn v Central R.R. Co., 142 NY 439, 445). Those distinctions have since been abandoned, but the Court of Appeals explained the impact of the statute at the time it was enacted as follows:
“[T]he intended effect of the statute, when originally enacted in 1956 as part of the former Conservation Law (L 1956, ch 842), was to limit the extent of the duty of a landowner to a person using his land for a permitted activity to that owed a trespasser under then existing rules, since abolished (Basso v Miller, 40 NY2d 233), i.e., merely to refrain from ‘a willful or malicious failure to warn.’ ” (Ferres v City of New Rochelle, 68 NY2d 446, 451 n 4, supra, referencing and quoting Sega v State of New York, supra, 60 NY2d at 191.)
By holding landowners only to the duty formerly owed to trespassers with respect to any persons who entered their land for suitable recreational activity, the statute fulfilled its essential purpose of encouraging landowners to allow or even invite (without charging a fee) members of the public into suitable property in order to engage in recreational pursuits. The *688 only duty that remained “unaffected” by the statute, and the only duty whose violation could give rise to liability, would be that formerly owed to trespassers — i.e., the duty to refrain from willfully or wantonly causing injury. It is possible, therefore, that the statement of the Law Revision Commission, quoted above, could accurately be reworded by inserting the statutory language from General Obligations Law § 9-103 (2) (a) :
“The distinction between [‘willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity’] (which would result in liability) and mere failure to use care, to keep premises safe for entry by a licensee or to warn of hazards, is significant for this bill, which deals only with the duty to keep premises safe or warn of hazards.” (Emphasis added.)
In other words, the distinction under discussion in the Law Revision Commission’s comments, and the one to which the Courts in Del Costello and Olson expressly refer, may well be precisely the distinction made in the statute itself in subdivision (2) (á). If that is the case, the question to be decided here would be whether placing the mooring cable across part of the bike path without providing a warning was a willful or malicious act.
A motion to dismiss a defense must be made on the ground that a defense is not stated or that it has no merit (CPLR 3211 [b] ; Winter v Leigh-Mannell, 51 AD2d 1012), and it is error for a court to strike a defense when material issues of fact remain unresolved (Matter of Harrison v State of New York, 262 AD2d 833; Connelly v Warner, 248 AD2d 941). The movant bears the burden of coming forward with sufficient proof to demonstrate that the defense cannot be maintained (1 Weinstein-KornMiller, CPLR Manual § 21.05; City of New York v Mills, 1996 WL 882642 [Civ Ct, NY County, Dec. 6, 1996, Stallman, J.]), while the defendant is entitled to the benefit of every reasonable construction of the pleading. “If there is doubt as to the availability of a defense, it should not be dismissed” (Duboff v Board of Higher Educ., 34 AD2d 824; see also, Pellegrino v Millard Fillmore Hosp., 140 AD2d 954). In this instance, claimant has not sufficiently developed the exact nature of the type of “affirmative” acts that are sufficient to exempt a landowner from the protection of General Obligations Law § 9-103, and thus I am unwilling, at this juncture, to preclude this issue.
Claimant’s motion to strike defendant’s sixth affirmative defense is denied, therefore, because there is insufficient infor *689 mation from which to determine whether the land on which claimant was injured was operated as a “supervised” public park and because there is a mixed question of fact and law as to whether the affirmative nature of defendant’s actions makes General Obligations Law § 9-103 inapplicable.
Canal Law § 120: Liability for “Navigational” Claims
Section 120 of the New York Canal Law waives, to a large extent, the State’s sovereign immunity with respect to claims arising on and from the operation of its canal system. By this statute, the State is made liable to “every person sustaining damages from the canals or from their use or management.” Excepted from this waiver, however, and therefore still under the umbrella of sovereign immunity, are “claims arising from damages resulting from the navigation of canals.” Defendants maintain that claimant in this action was injured “because of the operation of a boat (a dredge) which was navigating the adjacent canal” and thus has brought a “navigational claim” (Defendant’s Mem of Law, at 6). Claimant contends that the statutory exception cannot apply in this case because, however one may characterize the activity of the wrongdoer, there can be no immunity if the injured party was not engaged in navigating the canal at the time of the accident.
From its beginning, in the mid-1800’s, the State’s waiver of some portion of its immunity with respect to canal claims has never included those arising from navigation of the canals (see, Locke v State of New York, 140 NY 480 [1894], referring to L 1870, ch 321, and L 1883, ch 205). A review of cases decided under the various statutory provisions affecting the partial waiver for claims arising from use and management of the canals[5] suggests that the central purpose of the statute was to allow relief to citizens who were injured, or whose property was injured, because of the State’s essentially proprietary activity in constructing and operating the canals and their dams, locks and other features. Thus, one finds many actions arising from flooding or lowering the water table on adjacent lands, accidents on roads leading to the canals and negligence for normal, everyday activity carried out by canal workers (such as driving trucks in the course of their employment).
The reservation of immunity with respect to navigational activity has been explained as follows: “The intention of [this *690 part of] the statute was to provide that parties while using the canal for their own benefit should take the risks of navigation without reference to whether they were caused or affected by the negligence of the State officers.” (Zorn v State of New York, 45 App Div 163, 164 [3d Dept 1899].) In Locke v State of New York (140 NY 480, supra), a person standing on a barge was injured by a carelessly lowered draw bridge. The Court of Appeals expressly rejected an argument that the proviso exempting navigational claims applied only to instances in which the act of navigating the waters (as opposed to the act of moving a fixed, mechanical device) was one of the concurring causes of the injury. The Locke Court explained its conclusion in this fashion:
“The man who manages the locks and bridges in order to permit the passage of boats upon the canal, is engaged in navigating the canal, within the meaning of the statute, in the same sense as the man who directs or manages the power by means of which the boats are propelled upon the water. The movement of the boat upon the waters of the canal and the contact of the bridge above with the boat, as it was passing under it, were the two concurring causes that produced the injury in this case.
“Both were acts of navigation, because both were necessary in order to effectuate the passage of boats upon the waters of the canal” (140 NY at 483 [emphasis supplied].)
The Third Department later gave a slightly different explanation of the holding in Locke, stating that in that case “the injury was in no way attributable to or the result of the navigation of the canals, except that the act of navigation furnished the opportunity for the happening of the injury” (Zorn v State of New York, 45 App Div 163, 165, supra). In Zorn, a boat was destroyed because of a break in one of the canal dams after the boat had completed its trip through the canals and was tied near a dock waiting to be unloaded. Its destruction was considered to arise from navigation of the canal, however, because it still rested upon waters deemed to be part of the canal system and because, since the cargo had not been removed, “[t]he navigation in which the plaintiff was engaged was not, I think, at an end” (id. at 166). Since it is evident from other cases dealing with flood damage to lands and buildings adjacent to the canal that those types of losses would be *691 compensated if caused by a break in the dam, it is safe to say that the “navigational” exception to the waiver of immunity is construed quite broadly (accord, Hugelmaier v State of New York, 125 Misc 2d 1026, 1027 [Ct Cl 1984]). And, in fact, claims brought by persons who are injured while on the canal waters or whose property is injured while it is in the canal have been uniformly unsuccessful (see, Barrett v State of New York, 139 Misc 2d 42 [Ct Cl 1988]; Gray v State of New York, 205 Misc 242 [Ct Cl 1954]; Glens Falls Ins. Co. v State of New York, 188 Misc 684 [Ct Cl 1947]). This is true whether the injured parties are present on canal waters for private or commercial purposes (Hugelmaier v State of New York, supra); whether the vessels are in motion at the time of the injury (Glens Falls Ins. Co. v State of New York, supra [cement slab falling from canal wall onto motionless boat]); whether the State’s action involved operation of a statutory canal, a fixture, or of a boat upon the canal waters (Sayer v State of New York, 116 Misc 644 [Ct Cl 1921] [moored boat struck by derrick boat operated by the State]); and, as noted above, whether or not the direct cause of the injury had anything to do with actual navigation (Penn No. 5 v State of New York, 205 Misc 18 [Ct Cl 1953] [negligent withdrawal of water into an adjacent power house]; Condon v State of New York, 169 Misc 666 [Ct Cl 1938] [person on barge stuck by lift bridge]).
On the other hand, when the injured party (or that party’s personal property) is not physically involved in navigating the canal but, rather, on shore beside, above or some distance away from the canal waters, liability has been imposed, as long as it is proven that the injury is caused by negligence on the part of the State or its officials (Sipple v State of New York, 99 NY 284 [1885]; see, Rexford v State of New York, 105 NY 229 [1887] [faulty maintenance of an abutment used by pedestrians]; Hart v State of New York, 192 Misc 492 [Ct Cl 1948] [pedestrian injured by negligently operated lift bridge]; Hall v State of New York, 173 Misc 903 [Ct Cl 1940] [failure to post warnings for traffic adjacent to the canal]; Cooley v State of New York, 114 Misc 717 [Ct Cl 1921] [driver of automobile struck by carelessly lowered lift gate]).
In Rexford v State of New York (supra), the Court of Appeals stated that the language of the statutory proviso excluding navigational claims from the waiver of liability “can have no just application to accidents or injuries befalling one not at the time engaged in navigation of the canals and which did not result from that navigation” of the canals and also that the *692 proviso “contemplates a case in which the act of navigating is one of the concurring causes of the injury” (105 NY at 233). In Rexford, the injured party — like claimant — was uninvolved in navigation at the time of the accident, but in that case the State’s alleged negligence — failure to maintain an abutment used by pedestrians — was also unrelated to navigation. In the instant claim, using the broad definition of “navigation” that case law indicates is appropriate, I have no difficulty concluding that the dredge was indeed engaged in the act of navigating the canal, and it was without doubt one of the concurring causes of claimant’s injury. On the other hand, claimant, the injured party, was not at the time of her injury engaged in navigation of the canals, no matter how broadly that term is interpreted.[6] I am required, therefore, to decide — apparently for the first time — whether the identity and role of the injured party can, alone, determine the scope of the statutory waiver (or, alternatively, determine the extent of the retained immunity).
Although research has disclosed no fact pattern that exactly parallels the one presented here, I believe that the issue is rather easily resolved. It is apparently well accepted that the purpose of retaining sovereign immunity with respect to claims arising from navigation of the canal system was “to provide that parties while using the canal for their own benefit should take the risks of navigation” (Zorn v State of New York, 45 App Div 163, 165, supra). Claimant, in this instance, was making use of the path running alongside the canal for her own benefit, but she was not using the canal itself or assuming any of the risks of navigation. In addition, in Locke v State of New York (140 NY 480, 483, supra), the Court of Appeals considered operation of a lift bridge to be “an act of navigation” when it impacted — unfortunately, quite literally — on a boat located in the canal proper. At the same time, a number of the cases cited above have held that when negligently operated lift bridges and lift gates strike pedestrians near but not on the canal, or *693 automobiles being driven alongside or over the canal waters, the State is not immune from liability with respect to their claims. From this, and from the absence of any precedent holding that the State’s retained immunity covers injury to persons, or the property of persons, who were not themselves engaged in navigation, I conclude that Canal Law § 120 does not apply and thus does not bar the instant claim.
In summary, claimant’s motion to strike defendant’s third affirmative defense is granted, and her motion to strike defendant’s sixth affirmative defense is denied without prejudice. Defendant’s cross motion for summary judgment in its favor on the ground that Canal Law § 120 bars the claim is denied and, consequently, the seventh affirmative defense is stricken.

. This action has been commenced against three named defendants: the State of New York, the New York State Thruway Authority, and the New York State Canal Corporation. Counsel for defendants asserts that the State of New York is not a proper party because all jurisdiction over canal lands has been transferred to the Thruway Authority and the Canal Corporation. For the purposes of this motion, however, all three defendants will be retained in the caption, and defendants will be referred to collectively. In some instances, the potentially liable party will be referred to simply as “the State,” as it is the State that is referenced in the statute and that is most often the sole defendant in the cases being discussed.

. Subdivision (2) (b) of the statute provides another exception for situations in which a fee is paid for entry to the property. This is not an issue in the instant claim.

. As an initial matter, I reject defendants’ argument that the Ferres exception is limited to municipal parks and does not apply to State-owned parks and recreational facilities because the State’s liability to suit is the same as that of a private person and because “the exception has never been extended to similarly situated private persons” (Defendants’ Mem of Law, at 19). There is no rationale for distinguishing between different types of landowners in this respect, and I believe, in fact, that the Ferres exception would apply to private landowners, if there were any who chose to establish a regulated, supervised recreation area and open it to the public without charge. Moreover, the applicability of this exception to State lands has been recognized in many instances by appellate courts (see, e.g., Stento v State of *681 New York, 245 AD2d 771; Clark v State of New York, 178 AD2d 908; Wilkins v State of New York, 165 AD2d 514; Baisley v State of New York, 163 AD2d 502; Leonakis v State of New York, 126 AD2d 706).

. This decision may be found on the Court of Claims Web site at <http://court.acmenet.net/MacLaw>, under MacLaw No. 2001-005-506 (accessed Apr. 4, 2002).

. The earliest of these were chapter 332 of the Laws of 1854 and chapter 321 of the Laws of 1870. In 1894, the provision was enacted as section 37 of the Canal Law (L 1894, ch 338), and in 1939, as section 120 of that law (L 1939, ch 542).

. Defendants point to an example in Rexford v State of New York (105 NY 229, 233, supra) as establishing that damages to “teams drawing the boats or those in charge of them,” all of whom would be on the side of the canal and not in a boat, would fall within the scope of the immunity for navigational acts. I accept that this would be the case. The work of a team in propelling a boat forward through the canal, however, is as intricately related to the act of navigation as is the operation of a lift gate or maintenance of the canal side walls. Claimant’s actions in riding her bicycle alongside the canal simply cannot be analogized to that of the persons or animals moving along the towpath in order to pull a canal boat.