(July 18, 1990)

■ KAREN R. BAISLEY, as Administratrix of the Estate of ROBERT R. BAISLEY, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 71677.)—In a claim, *inter alia,* to recover damages for personal injuries and wrongful death arising from a motor vehicle accident, (1) the defendant State of New York appeals, as limited by its brief, from so much of an interlocutory judgment of the Court of Claims (McCabe, J.), dated January 19, 1989, as, after a nonjury trial, apportioned 50% of the fault in the happening of the accident to the State, and (2) the claimant cross-appeals from so much of the same interlocutory judgment as found the decedent 50% at fault in the happening of the accident.

Ordered that the interlocutory judgment is affirmed, without costs or disbursements.

This case arose from an incident on January 13, 1985, in which the claimant's decedent Robert R. Baisley died after driving an all-terrain vehicle (hereinafter ATV) into a wire cable stretched across a trail located within the Stonykill Farm Environmental Education Center (hereinafter the Center). The Center was owned by the defendant State of New York, and operated by the New York State Department of Environmental Conservation (hereinafter DEC), which placed the cable across the trail. The cable had been painted orange and had had streamers attached to it, but these streamers were withered at the time of the accident. The decedent, who had been denied permission by the DEC to operate his ATV at the Center, was aware that the use of such vehicles was prohibited on the trail where he was injured. The claimant,

the administratrix of the decedent's estate, brought the instant claim, *inter alia,* to recover damages for personal injuries and wrongful death. After a trial, the Court of Claims found the decedent and the State each to be 50% at fault in the happening of the accident. We affirm.

The principal issues to be addressed on this appeal were (1) whether the Recreational Use Act *(see,* General Obligations Law § 9-103) was applicable to the Center, and thus relieved the State of liability for the decedent's injuries and death, and (2) if the statute was applicable, whether the State acted willfully or maliciously in placing the cable across the path and thus lost the protection of General Obligations Law § 9-103.

General Obligations Law § 9-103 exempts landowners, including the State, who permit their property to be used for certain specified recreational activities, including the use of motorized vehicles, from liability for injuries sustained on the property unless, *inter alia,* there is a "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [1] [a]; [2] [a]; *see, Sega v State of New York,* 60 NY2d 183). "[T]he sole purpose of the statute was 'to induce property owners, who might otherwise be reluctant to do so for fear of liability, to. permit persons to come on their property to pursue specified activities' " *(Iannotti v Consolidated Rail Corp.,* 74 NY2d 39, 43; *see, Ferres v City of New Rochelle,* 68 NY2d 446, 451). However, "[i]t would be contrary to reason to assume that the Legislature could have intended that the statute. apply in circumstances where neither the basic purpose of the statute, nor, indeed, any purpose could be served", such as in a case "where [a government entity] has already held its recreational facility open to the public and needs no encouragement to do so from the prospective immunity offered by the statute" *(Ferres v City of New Rochelle, supra,* at 452).

The Center was opened to the public for the purpose of promoting education about environmental issues. Thus, public access to the Center did not result from the incentive offered by General Obligations Law § 9-103. Therefore that section does not serve to limit the State's liability for the decedent's injuries and death *(see, Ferres v City of New Rochelle, supra,* at 452). Our dissenting colleague argues that *Ferres v City of New Rochelle (supra),* does not support a holding that General Obligations Law § 9-103 is inapplicable in the case at bar, since *Ferres v City of New Rochelle (supra),* involved a "highly developed, supervised, and regulated municipal park" (at 505).

However, in *Meyer v County of Orange* (129 AD2d 688, 690), where the level of staffing, maintenance, patrol and supervision at an Orange County park was similar to that at bar, this court held that General Obligations Law § 9-103 was not applicable, for the following reasons: "Moreover, the existence of diverse recreational facilities upon the property clearly demonstrates that the park is held open to the public for the pursuit of some activities other than those specified in General Obligations Law § 9-103. Hence the application of the statute herein would foster an unreasonable result by requiring the county to observe different standards of care with respect to various park visitors depending upon the nature of the activity for which they entered the premises."

Additionally, although the trail on which the accident occurred may have been physically conducive to the operation of ATV's, it was not the type of property which was *appropriate* for the use of such vehicles *(see, Iannotti v Consolidated Rail Corp., supra,* at 45). The trail was used for hiking, bird watching, cross-country skiing and snow shoeing, and, the use of ATV's thereon would not only be likely to disrupt the stated activities, but also to threaten those engaged in those activities with serious injury. Thus, the application of General Obligations Law § 9-103 under the circumstances at bar would not further the purpose of that statute *(see, Iannotti v Consolidated Rail Corp., supra,* at 46).

In the absence of the application of General Obligations Law § 9-103, the State, which allowed the public to pursue a plethora of recreational activities at the Center, assumed a duty of "reasonable care under the circumstances" with "foreseeability [as] a measure of liability" to those who entered therein *(Basso v Miller,* 40 NY2d 233, 241). Based on this standard, we find no reason to disturb the Court of Claims interlocutory judgment which found the State 50% at fault in the happening of the accident.

We have considered the parties' remaining contentions and find them to be without merit. Mangano, P. J., Rubin and Miller, JJ., concur.

Rosenblatt, J., dissents and votes to reverse the interlocutory judgment appealed from and to dismiss the claim, with the following memorandum: I agree with the trial court's conclusion that there was no evidence of willfulness or malice on the part of the State. I respectfully dissent, however, because in my view General Obligations Law § 9-103 governs this case, which falls much closer to *Sega v State of New York*

(60 NY2d 183) and *Cutway v State of New York* (60 NY2d 183) than it does to *Ferres v City of New Rochelle* (68 NY2d 446). The minimal level of staffing, maintenance, patrol, and supervision of the 750-acre environmental conservation preserve, including the 180 acres through which the Sierra Trail ran, is not comparable to a highly developed, supervised, and regulated municipal park in New Rochelle. Indeed, the 1½-to-2-mile Sierra Trail on which the accident took place, is perhaps half the width of the entire City of New Rochelle.

Here, the size of the preserve and the length of the Sierra Trail is so extensive and unsupervised that the decedent (who was pointedly and expressly denied permission to use his vehicle there) could proceed undetected. It was in these unsupervised reaches that he encountered the very same condition that existed in *Cutway (supra)*—a barrier cable, closing off the trail. In *Cutway*, the immunity statute was held to apply.

The legislative purpose of General Obligations Law § 9-103, to expand the availability of outdoor recreation by extending a measure of immunity to landowners, is disserved by an overly narrow construction or application *(see, Iannotti v Consolidated Rail Corp.,* 74 NY2d 39, 44). I would stress that this accident did not take place, for example, because of broken glass or an oily floor inside a staffed museum or library at the premises. The legislative goals are not furthered by retracting immunity from the landowner merely because the landowner had previously allowed access to the vast outdoors and had provided some structural amenities as well.

In imposing liability on the State, the majority finds (at 504) that section 9-103 does not apply because the Sierra Trail, although "physically conducive" to ATV operation, was not *"appropriate"* for that use, owing to the danger to hikers. That is precisely why the trail was closed, and it is ironic to grant immunity to a landowner where the injured party acts "appropriately", but to deny the landowner immunity when the injured party acts in defiance of the rules. Awarding a recovery to a claimant under these circumstances is a ringing disincentive to landowners, who will be more prone to close their properties, to the potential deprivation of countless hikers, horseback-riders, woodcutters, boaters, cross-country skiers, and other outdoor recreationalists.

I would reverse the interlocutory judgment and dismiss the claim.