ROGER FENTON, Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant and Third-Party Plaintiff, et al., Defendant, et al., Third-Party Defendants.

First Department, February 14, 1991

APPEARANCES OF COUNSEL

*DeBlasio & Alton, P. C.,* and *Alexander J. Wulwick* for respondent.

*Joseph Scibilia* of counsel *(Joan M. Faley* with him on the brief; *Deegan & Scibilia,* attorneys), for appellant.

## OPINION OF THE COURT

SULLIVAN, J. P.

On August 29, 1982, plaintiff, then 27 years of age, was seriously injured when, while riding his motorbike along a dirt access road in the Town of Yorktown on a right-of-way owned by Consolidated Edison Company of New York, Inc. (Con Edison), he was thrown from the bike when it struck a ditch, one of many placed in the road by Con Edison to prevent erosion.

The dirt access road, approximately a car-width wide, runs along the right-of-way, a 200-foot-wide strip of land, which runs for 40 miles from Pleasant Valley in Westchester County to Millwood in Dutchess County, under two overhead electrical transmission lines strung from towers located along the right-of-way, and provides Con Edison's employees with access to the lines. Con Edison had drainage ditches, known as water bars or swales, placed in the access road to channel the flow of water into side ditches, thereby preventing erosion and washouts.

The particular portion of the roadway on which plaintiff was riding at the time of the accident, located about one-half mile from the local high school, was a popular recreational site, used as a bike trail. It is undisputed that Con Edison

knew, prior to the date of the accident, that the portion of the access road in question was used as a motorbike trail.

According to plaintiff, the accident occurred a few seconds after he had navigated a curve in the roadway; he was traveling at about 25 miles per hour when he suddenly saw a ditch, at least two feet wide, wider at the left side, running across the entire width of the road. Plaintiff applied both brakes but hit the ditch at the wider side on the left. He was thrown from the bike, striking the ground with his head.

In his subsequently commenced action seeking both compensatory and punitive damages, plaintiff alleged negligence on Con Edison's part in the maintenance and repair of the roadway, the condition of which, he maintained, constituted a trap. After joinder of issue, Con Edison moved for summary judgment dismissal of the complaint, claiming that the action is barred by General Obligations Law § 9-103, which grants property owners immunity from liability for ordinary negligence arising out of the use of their property for certain specified recreational activities, including motorbiking, unless the property owner willfully or maliciously fails to guard or warn against a dangerous condition, use, structure or activity.*

In opposing the motion, plaintiff argued that issues of fact existed as to whether the roadway on which the accident occurred was suitable and appropriate for motorbiking and whether Con Edison acted willfully or maliciously in failing to guard or warn against the hazards posed by the ditches situated thereon. The IAS court expressly rejected plaintiff's argument that the roadway was neither conducive to motorbiking nor appropriate for public use for that activity but denied the motion nonetheless on the narrow ground that

---

* In pertinent part, General Obligations Law § 9-103 provides:

"1. Except as provided in subdivision two,

"a. an owner, lessee or occupant of premises * * * owes no duty to keep the premises safe for entry or use by others for hunting, fishing, organized gleaning * * * canoeing, boating, trapping, hiking, cross-country skiing, tobogganing, sledding, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes * * *.

"2. This section does not limit the liability which would otherwise exist

"a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity".

there was "a question as to whether [Con Edison], having created a ditch to prevent erosion, was guilty of 'willful or malicious failure to guard, or [to] warn against, a dangerous condition'." Con Edison appeals but only from "that portion of [the] order denying [its] motion for summary judgment." We reverse, grant summary judgment and dismiss the complaint.

■ On appeal, plaintiff argues, as it did before the IAS court, that General Obligations Law § 9-103 is inapplicable because the access road was neither conducive to motorbiking nor appropriate for public use for that activity. On a procedural point, we reject Con Edison's claim that the issue is not before us because plaintiff did not cross-appeal from the court's ruling, which was adverse to him on that point. Plaintiff could not appeal from the denial of summary judgment dismissing the complaint because he was not an aggrieved party. *(See, CPLR 5511; Parochial Bus Sys. v Board of Educ., 60 NY2d 539, 544-545.)* Furthermore, the fact that Con Edison limited the scope of its appeal is of no moment since plaintiff is entitled to have the determination affirmed on any ground he properly raised before the IAS court. *(See, Murray, Hollander, Sullivan & Bass v HEM Research, 111 AD2d 63, 66.)*

In our view, the IAS court correctly determined that the roadway in question was suitable and appropriate for recreational motorbiking. In *Iannotti v Consolidated Rail Corp.* (74 NY2d 39), the plaintiff, who had ridden a motorized trail bike on a stone and dirt right-of-way used by railroad workers as an access road for purposes of maintaining the railroad tracks alongside of which it ran, was injured when he was thrown from his motorbike after it had struck a pile of stone. In granting summary judgment dismissing the complaint, the Court of Appeals rejected the notion that the defendant's commercial use of the right-of-way barred the application of General Obligations Law § 9-103, the availability of which, it held, depends upon the suitability and appropriateness of the premises for the recreational uses stated in the statute: the plurality held that the property must be of a type "which is not only physically conducive to the particular activity or sport but * * * also * * * appropriate for public use in pursuing the activity as recreation". *(Supra, at 45.)* It further found that applying section 9-103 to the right-of-way, which was physically amenable to public use for a number of recreational activities, would be consistent with the statute's underlying purpose of inducing landowners, " 'who might otherwise be reluctant to do so for fear of liability' " *(supra, at 43, quoting

*Ferres v City of New Rochelle,* 68 NY2d 446, 451), to make their property accessible to the public for recreational use. *(Supra,* 74 NY2d, at 46-47.)

The facts here are essentially identical to those in *Iannotti (supra).* Although plaintiff testified that he had never before ridden on the particular stretch of access roadway where the accident occurred, he had, prior to the date of the accident, operated his motorbike on other locations along the roadway. In fact, he had earlier that day ridden on the same access road in the vicinity of the high school. His riding companion that fateful day testified that "a lot of people" use the access road, which is "the kind of trail that dirtbikers like." Both plaintiff and his companion testified to the presence of a third rider on the trail on the date of the accident. In addition, Con Edison's project manager testified that on 2 or 3 occasions in the year prior to the accident he observed bike riders on the access road riding in groups of 2 or 3 at a time. Since, as is apparent from this record, Con Edison's right-of-way access road was suitable for the particular activity in which plaintiff was engaged, off-road motorbiking, and appropriate for such use by the public, the *Iannotti* test for section 9-103 immunity is satisfied.

Plaintiff argues that the access roadway was dangerous and, therefore, neither physically conducive to motorbiking nor appropriate for the public's use in pursuing motorbiking as a recreational activity. The presence of a dangerous condition, however, has never been adopted as the test for suitability or appropriateness. In *Iannotti,* where, as noted, the plaintiff, in riding a trial bike along a stone and dirt right-of-way, struck a pile of ballast, thereby injuring himself, the Court of Appeals defined the test for determining suitability and appropriateness for a particular recreational use as whether the property can be so used and whether it is appropriate for the public's use in pursuing such activity. As noted in the concurring opinion in *Iannotti,* "It is not clear what physical attributes of the property will render it inappropriate for a given use. I assume that it must be something other than a dangerous condition or else the statute will never be applicable in the very situation it was designed to address—where an injury is caused by a dangerous condition on the land." *(Supra,* at 49 [Wachtler, Ch. J.].) Likewise, in *Sega v State of New York* (60 NY2d 183), the danger which the landowner created by stringing up between fence posts an almost hidden cable that struck the claimant, riding an all-terrain vehicle, did not render the

premises unsuitable or inappropriate so as to deny the landowner the protection of section 9-103. *(See also, Gardner v Owasco Riv. Ry.,* 142 AD2d 61, *lv denied* 74 NY2d 606.)

∎ Plaintiff also argues that since the access road "is regularly used by Con Edison employees for a variety of inspection, repair and maintenance purposes, which are dangerously inconsistent with its use by the public for motorized vehicle operation", it is not appropriate for public use. It should be noted that this accident occurred on a Sunday and, as is conceded, no construction activity was taking place on that day. Nor is there any evidence that hazardous construction was, at any time ever, taking place all along the 40-mile length of access road. The "continuous activity" along the right-of-way, of which Con Edison's witness spoke, would take place at one specified area of the access road and then another. In fact, as plaintiff testified, as he traveled on the roadway prior to the accident he did not observe any construction equipment in the area. Nor did his companion.

In support of his argument that the access road was not the type of property which was appropriate for motorbikes, plaintiff cites *Baisley v State of New York* (163 AD2d 502) as "virtually on all fours". There, the decedent was killed when he drove his all-terrain vehicle into a wire cable stretched across a trail at a State-owned environmental education center. *Baisley* is distinguishable in several important respects, most notably in that there the property was already open to the public for the purpose of educating it about environmental issues. Thus, "public access * * * did not result from the incentive offered by General Obligations Law § 9-103." *(Supra,* at 503.) Moreover, since the use of an all-terrain vehicle was likely to disrupt certain recreational activities for which the property was used and threaten those engaged in such activities with serious injury, the decedent had been denied permission to operate his vehicle and was aware that such vehicles were prohibited on the trail. While the trail might have been conducive to all-terrain vehicle driving, it was not appropriate for such use because of the recreational activities of other legitimate park users.

Thus, on the question of the appropriateness of a specific piece of property for a particular recreational activity, while a softball field or bridle path, for example, might be conducive to motorbike riding, neither would be appropriate for such use. That is not the case here. Con Edison's dirt access road was not part of a public park or designated for other recre-

ational activities. And, as already noted, that the property also serves a commercial function does not bar the application of General Obligations Law § 9-103's immunity. *(Iannotti v Consolidated Rail Corp.,* 74 NY2d 39, *supra.)*

With respect to section 9-103's exception, to establish a " 'willful or malicious failure' " to guard or warn against the danger the ditch posed, plaintiff "was required to show an intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result". *(Gardner v Owasco Riv. Ry., supra,* 142 AD2d, at 64.) As the Court of Appeals has noted, in such a case "[t]he defendant's negligence, if any, is immaterial." *(Sega v State of New York,* 60 NY2d 183, 192, *supra.)*

■ The IAS court held that Con Edison's placement of erosion control ditches on the access road raised a question of fact as to whether its failure to warn or guard against them was willful or malicious. The creation of ditches in the roadway, however, has no bearing on whether Con Edison acted willfully or maliciously in failing to warn plaintiff of the danger they posed. The Court of Appeals analysis in *Cutway v State of New York* (60 NY2d 183, *supra),* decided together with *Sega v State of New York (supra)* is instructive in this regard.

In *Cutway (supra),* the property owner, the State, as a vandalism-control measure, placed a cable across a gravel road between two posts. When installed, the cable and posts were painted yellow, and two red reflectors were hung from the cable. No other warning signs were posted anywhere. The claimant, approaching in an all-terrain vehicle from a direction in which the road made a sharp turn, struck the cable. The cable had not been inspected for some time; the reflectors were missing and the paint "had worn off enough to impair the cable's visibility." *(Supra,* at 189.) The court held that "[t]he affirmed findings of fact establish that the State may have been negligent in constructing the cable gate and failing to post warnings, but there is nothing to show that its conduct was willful or malicious." *(Supra,* at 192.) Thus, the fact that the property owner creates the condition is not determinative of whether he has willfully failed to warn or guard against it.

While Con Edison may have been negligent in failing to post warnings of the ditches or to guard users of the roadway against them, there is no issue of fact as to whether it acted willfully or maliciously. "The standard imposed by section 9-

103 requires a graver act than mere negligence before liability may be imposed." *(Supra,* at 192-193.) It should be noted that the determination in *Cutway* was reached despite the fact that the State had installed the cable in order to keep recreational intruders off its property. Here, Con Edison cut drainage ditches across its dirt roadway not to prevent others from using the property but, rather, to prevent erosion and thereby benefit those using the roadway.

In another case involving section 9-103, *Gardner v Owasco Riv. Ry.* (142 AD2d 61, *supra),* where the defendant railway knew from its employee's occasional inspections that its railway bed was being used by drivers of all-terrain vehicles, it was argued that it should have instituted inspection procedures to prevent the erection by third parties of ice barriers, one of which caused the plaintiff's injuries. The court held that the defendant's failure to act did not rise to the level of willful or malicious conduct so as to trigger the statute's exceptions.

Plaintiff's citations of *Mayer v Temple Props.* (307 NY 559) and *Carradine v City of New York* (13 NY2d 291) are unavailing since they involve application of prevailing common-law standards prior to the abandonment of the distinctions between trespasser, licensee and invitee in assessing a landowners duty of care *(see, Basso v Miller,* 40 NY2d 233) and have no applicability to General Obligations Law § 9-103. Nothing in section 9-103 suggests that it was intended to codify the common law. As the Court of Appeals has noted, "We see no reason to reintroduce confusion and conflict by interpreting the statute as a retention of the common-law classifications." *(Sega v State of New York, supra,* 60 NY2d, at 192.)

Since the access road on which he was injured was suitable and appropriate for recreational motorbiking, thereby entitling Con Edison to immunity from liability for ordinary negligence, and plaintiff failed to submit any evidence sufficient to raise a factual issue as to its willful or malicious failure to warn, summary judgment dismissing the complaint should have been granted.

Accordingly, the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered March 30, 1990, denying defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motion granted. The clerk is directed to enter judgment in favor of defendant-appellant dismissing plaintiff's complaint.

CARRO, WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered March 30, 1990, unanimously reversed, on the law, without costs and without disbursements, and defendant-appellant's motion for summary judgment granted.