Sutton 58 Assocs. LLC v Pilevsky (2020 NY Slip Op 08020)





Sutton 58 Assocs. LLC v Pilevsky


2020 NY Slip Op 08020


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020

Before: Friedman, J.P., Gische, Oing, Singh, Moulton, JJ. 


Index No. 654917/16 Appeal No. 8064 Case No. 2018-21045 

[*1]Sutton 58 Assocs. LLC, Plaintiff-Respondent,
v
Philip Pilevsky et al., Defendants-Appellants.


Friedman Kaplan Seiler & Adelman LLP, New York (Robert S. Smith of counsel), for appellants.
Kramer Levin Naftalis & Frankel LLP, New York (Ronald S. Greenberg of counsel), for respondent.



Upon remittitur from the Court of Appeals for consideration of the issues raised but not determined on appeal to this Court, order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 8, 2018, which denied defendants' motion for summary judgment dismissing the complaint, unanimously modified, on the law, to the extent of granting defendants Philip Pilevsky, Michael Pilevsky, and Seth Pilevsky's motion for summary judgment to deny piercing of the corporate veil, and otherwise affirmed, without costs.
This action arises from the default of loans that plaintiff Sutton 58 Associates, LLC made to nonparties BH Sutton Mezz LLC (Mezz Borrower) and Sutton 58 Owner LLC (Mortgage Borrower) (collectively, the Borrowers) in order to finance the development and construction of an apartment complex on a Manhattan property owned by Mortgage Borrower. Mezz Borrower owned 100% of the membership interest in Mortgage Borrower.
In relevant part, it is undisputed that the loan agreements were intended to ensure that, if the borrowers filed for bankruptcy, they would be single-asset real estate entities and the bankruptcy process would, at the very least, be expedited.
Plaintiff and Mezz Borrower also entered into a pledge and security agreement, in which Mezz Borrower pledged its 100% membership interest in Mortgage Borrower as collateral for the mezzanine loan. This agreement gave plaintiff the right to foreclose upon and sell that membership interest in the event of a default.
In January 2016, the borrowers defaulted. A few days after Supreme Court ordered that the sale proceed at the end of February 2016, Mezz Borrower filed a voluntary petition for chapter 11 bankruptcy in federal court. This automatically stayed the foreclosure action. Mezz Borrower was represented by nonparty LaMonica Herbst & Maniscalco, LLP (LH&M). To pay LH&M, Mezz Borrower borrowed $50,000 from defendant Prime Alliance Group, Ltd.
On March 10, 2016, plaintiff moved to dismiss Mezz Borrower's bankruptcy case or lift the automatic stay. Plaintiff argued that Mezz Borrower had filed for bankruptcy in bad faith because it had no reasonable prospect of reorganizing — it was a single-asset entity, with no cash flow.
Meanwhile, as of February 26, 2016, Mortgage Borrower entered into a Contribution Agreement with defendant Sutton Opportunity LLC. Sutton Opportunity agreed to contribute three cooperative apartments in Lynbrook to Mortgage Borrower by March 31, 2016; in return, it would obtain a 49% interest in nonparty BH Sutton Owner LLC, the parent of Mezz Borrower.
On April 6, 2016, Mortgage Borrower filed for bankruptcy. Due to its ownership of the Lynbrook apartments, Mortgage Borrower was able to state in its bankruptcy petition that it was not a single-asset real estate business. If Mortgage Borrower had been a single-asset real estate business, the Bankruptcy Code would have granted plaintiff certain protections against the automatic bankruptcy stay.
On April [*2]7, 2016, the parties in the bankruptcy case appeared before that court. The Bankruptcy Judge expressed skepticism about plaintiff's motion to dismiss Mezz Borrower's case and ordered the two Borrowers' bankruptcy cases to be administered jointly. On May 6, 2016, plaintiff withdrew, without prejudice, its motion to dismiss Mezz Borrower's bankruptcy case or lift the automatic stay.
On or about September 16, 2016, plaintiff commenced the instant action. Plaintiff sued Prime Alliance, which had provided the money for Mezz Borrower to hire a bankruptcy lawyer; Sutton Opportunity, which had contributed three apartments to allow Mortgage Borrower to file for bankruptcy; Philip Pilevsky (Philip), Prime Alliance's president and sole shareholder; and Michael and Seth Pilevsky (Michael and Seth) (together with Philip, the Pilevskys), who own 100% of Sutton Opportunity. The first cause of action is against Philip and Prime Alliance for tortious interference with plaintiff's contracts with Borrowers; the second is against Michael, Seth, and Sutton Opportunity for tortious interference with the same. Prior to discovery, defendants filed a motion for summary judgment. Supreme Court denied defendants' motion. This appeal ensued.
We reversed and granted defendants' motion, finding that plaintiff's claims were preempted by federal law (168 AD3d 477 [1st Dept 2019]). The Court of Appeals reversed our order and remitted the case to this Court "for consideration of issues raised but not determined" (_NY3d_, 2020 NY Slip Op 06939 [2020]).
As an alternative ground for summary judgment, defendants contend that plaintiff's claims are barred by the Noerr-Pennington doctrine. "[T]he Noerr-Pennington doctrine . . . holds, essentially, that parties may not be subjected to liability for petitioning the government." (I.G. Second Generation Partners, L.P. v Duane Reade, 17 AD3d 206, 208 [1st Dept 2005]). This argument fails.
"The filing of litigation falls within the protection of the Noerr-Pennington doctrine, which has been applied to bar claims of tortious interference predicated on the commencement of litigation" (I.G., 17 AD3d at 208). Plaintiff is not suing defendants for having filed a prior lawsuit. By contrast, if plaintiff had sued Borrowers for filing for bankruptcy, such a claim would be barred by Noerr-Pennington.
Defendants also contend that the claims against the Pilevskys should be dismissed and the veils of the business entity defendants should not be pierced to reach the individual defendants. We agree.
As an initial matter, the law of the state where a corporation is chartered applies to veil-piercing (see e.g. Cobalt Partners, L.P. v GSC Capital Corp., 97 AD3d 35, 40 n 1 [1st Dept 2012]). Prime Alliance is a New York corporation; Sutton Opportunity is a Delaware LLC. Here, where the parties cite only New York law, we will apply that law (see e.g. Cobalt, 97 AD3d at 40 n 1).
"New York law disfavors disregard of the corporate form" (id. at 40). "The [*3]concept of piercing the corporate veil is a limitation on the accepted principles that . . . the owners [of a corporation] are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 140 [1993]).
"Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018] [internal quotation marks omitted]).
"Since, by definition, a corporation acts through its officers and directors, to hold a shareholder/officer such as [the Pilevskys] personally liable, a plaintiff must do more than merely allege that the individual engaged in improper acts or acted in 'bad faith' while representing the corporation." (East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 16 NY3d 775, 776 [2011]). Instead, "[t]he party seeking to pierce the corporate veil must establish that the owners [of the corporation], through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene" (Morris, 82 NY2d at 142).
Here, even if the complaint adequately alleges the Pilevskys' domination of Prime Alliance and Sutton Opportunity, it does not sufficiently allege injury to plaintiff. The complaint is conclusory in stating that both Prime Alliance and Sutton Opportunity tortuously interfered with plaintiff's loan agreements. The complaint refers to a declaration that Philip submitted under penalty of perjury in the bankruptcy case in which he stated that Prime Alliance advanced $50,000 to LH&M "at the request of Michael . . ., one of the principals of Sutton Opportunity." Based on these allegations, at most, the wrong would be against Prime Alliance and Sutton Opportunity.
Moreover, plaintiff has not shown that the Pilevskys caused Prime Alliance and Sutton Opportunity to become judgment-proof. Thus, it has not satisfied its burden under Morris (see also James v Loran Realty V Corp., 20 NY3d 918, 919[2012] ["Plaintiffs . . . had the burden to show that the individual defendants 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against' them (quoting Morris at 142). Plaintiffs did not meet this burden, inasmuch as they failed to produce evidence that the individual defendants took steps to render the corporate defendant insolvent in order to avoid plaintiffs' claim for damages or otherwise defraud plaintiffs"]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: [*4]December 29, 2020