47 E. 34th St. (NY) L.P. v BridgeStreet Worldwide, Inc. (2023 NY Slip Op 04702)

47 E. 34th St. (NY) L.P. v BridgeStreet Worldwide, Inc.

2023 NY Slip Op 04702

Decided on September 21, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 21, 2023

Before: Manzanet-Daniels, J.P., Singh, Moulton, Shulman, Higgitt, JJ. 

Index No. 653057/18 Appeal No. 323-323A Case No. 2022-01819 

[*1]47 East 34th Street (NY) L.P., Plaintiff-Respondent,
v
BridgeStreet Worldwide, Inc., et al., Defendants, Versa Capital Management, LLC, et al., Defendants-Appellants.

Perkins Coie LLP, New York (David W. T. Daniels of counsel), for Versa Capital Management, LLC, appellant.
Gelber & Santillo PLLC, New York (R. Zachary Gelber of counsel), for Domus BWW Funding, LLC, appellant.
Ressler and Ressler, New York (Ellen R. Werther of counsel), for respondent.

Appeals from orders, Supreme Court, New York County (Andrew Borrok, J.), entered April 27, 2022, which, to the extent appealed from, granted plaintiff's motion for summary judgment on its claims to recover on a guaranty against defendants-appellants Versa Capital Management, LLC (Versa) and Domus BWW Funding, LLC (Domus Funding) as successors to and alter egos of guarantor BridgeStreet Worldwide, Inc. (BWW) and denied Versa and Domus Funding's cross-motion for summary judgment dismissing the claims based on successor liability, alter ego liability, and fraudulent conveyance, motion to amend their responses to plaintiff's first notice to admit, and motion to amend their answer, deemed appeals from the judgment (see CPLR 5520[c]), same court and Justice, entered May 24, 2022, awarding plaintiff damages in the amount of $13,617,170.46, and, as so considered, said judgment unanimously reversed, on the law, without costs, the judgment vacated, plaintiff's motion for summary judgment denied, Versa and Domus Funding's cross-motion for summary judgment granted, and Versa and Domus Funding's motions to amend their responses to plaintiff's first notice to admit and to amend their answer denied as academic.
The lease guaranty giving rise to the instant action was signed in 2012 by defendant BWW, a holding company for domestic and international corporate travel businesses. The guaranty pertained to a lease between plaintiff and BWW's subsidiary, nonparty BridgeStreet Corporate Housing LLC (BridgeStreet). The lease gave BridgeStreet the right to sublease 110 apartments in plaintiff's building in Manhattan for temporary corporate housing, and provided that BridgeStreet could not rent out units for periods of less than six months in order to ensure the building's eligibility for Real Property Tax Law § 421-a benefits. BridgeStreet did not comply with this term. The New York State Attorney General investigated plaintiff for improper receipt of tax benefits, which resulted in plaintiff agreeing to pay New York City over $4.5 million in improperly exempted taxes and investigation costs. Plaintiff eventually obtained a judgment against BridgeStreet, which remains unsatisfied.
In 2018, plaintiff sued BWW and defendants-appellants Versa, a private equity investment advisor, and Domus Funding, a Versa-managed special purpose entity.[FN1] Neither Versa nor Domus Funding (collectively defendants) were signatories to the guaranty. In its amended complaint, plaintiff asserted several theories of liability against Versa and Domus Funding based on a March 3, 2014 consensual foreclosure of BWW's assets (the foreclosure). Although BWW was dissolved the day after the foreclosure, BridgeStreet continued to operate the same corporate apartment rental business until November 25, 2020, when it filed for Chapter 7 liquidation.
In the order appealed, Supreme Court held that Versa and Domus Funding, which the court effectively reified as a unitary entity it called the "Versa parties," [*2]were subject to successor liability under a "mere continuance" theory, and as the alter ego of BWW. Because the documentary evidence disproves liability under either theory, we now reverse.
The Loan Foreclosure
In April 2013, Domus Funding purchased a syndicated loan made to BWW by nonparty lenders Credit Suisse AG, Cayman Islands Branch, Longacre Capital Partners (Q.P.), L.P., and Longacre Master Fund, Ltd. The loan, which was originally entered into on March 1, 2012, was secured by substantially all of BWW's assets, including BWW's equity interests in its operating companies (BridgeStreet, among others) and a pledge of more than 50% of BWW's Class A common stock. The loan, among other things, included the right of the majority of the lenders to appoint directors to BWW's board. Domus Funding purchased the loan, which was valued at $30 million, at the discounted price of $23 million. It is significant that Domus Funding purchased the loan at 65% of its value, as this reflected the skepticism of both the buyer and seller that BWW would be able to satisfy the loan in full. Versa was not a party to this loan purchase.
By notice dated May 29, 2013, Domus Funding declared a default on the loan. On September 30, 2013, BWW and Domus Funding entered into a forbearance agreement (the Forbearance Agreement). On November 11, 2013, BWW notified Domus Funding that it could not meet its obligations under the Forbearance Agreement. After considering its options, BWW's board agreed to the foreclosure. In preparation for the foreclosure, business consulting firm BBK, Ltd. prepared an appraisal report dated January 27, 2014, which valued BWW's businesses at $29.7 million, far less than the amount that BWW owed on the loan.
The foreclosure went forward on March 3, 2014. The documentary evidence in this appeal, which was turned over in discovery on or about October 4, 2018, reflects that BWW's assets were transferred to nonparties Domus BWW Group, LLC (Domus Group) and Domus BWW UK Holdings, Ltd. (Domus UK). BWW's assets were not transferred to Versa or retained by Domus Funding. Pursuant to a Collateral Transfer Agreement, dated March 3, 2014, among BWW, BridgeStreet, and Domus Funding (the CTA), Domus Funding transferred, as Collateral Agent, certain domestic collateral to Domus Group and certain foreign collateral to Domus UK. The CTA also recited that "the aggregate fair market value of the Purchased Assets [was] less than the outstanding principal amount of and interest accrued on the Loans." The CTA provided that the foreclosure "constitute[d] a good faith, arm's length transaction" satisfying $30 million of the loan, cancelling $9.5 million of the loan, and leaving a $7.5 million deficiency.
Pursuant to an Asset Transfer Agreement, dated March 3, 2014, among Domus Funding, Domus Group, and Domus UK (the ATA), Domus Funding transferred certain domestic assets, which included BridgeStreet, to Domus Group and assigned the right to foreclose certain foreign [*3]assets to Domus UK. A Stock Power, dated March 3, 2014, further reflected that "100 units" of BridgeStreet was transferred to Domus Group; again, not to Versa or to Domus Funding. The next day, on March 4, 2014, BWW filed dissolution papers.
The Instant Action
Plaintiff commenced this action on July 3, 2018, and served an amended complaint on August 14, 2018. The parties exchanged discovery. Versa and Domus Funding moved to dismiss the complaint, and plaintiff cross-moved for summary judgment.
In an order dated November 6, 2019, Supreme Court denied plaintiff's cross- motion for summary judgment, finding that although plaintiff made a "prima facie showing that the Versa Parties completely absorbed [BWW's] business operations," there were "issues of fact precluding summary judgment at this stage" (47 E. 34th St. [NY], L.P. v BridgeStreet Worldwide, Inc., Sup Ct, NY County, Nov. 6, 2019, Borrok, J., index No. 65307/2018 at 17-18 [2019 order]). Supreme Court continued, "Specifically, there are issues of fact regarding the location of the business before and after the Foreclosure and the degree to which there was continuity of employees and management" (id. at 18). Supreme Court did not indicate that these were the sole issues of fact or that it was making fact findings pursuant to CPLR 3212(g).
Supreme Court partially granted, and partially denied, defendants' motion to dismiss the amended complaint. As is relevant here, the court declined to dismiss the claims based on a successor, alter ego/veil piercing, or fraudulent conveyance theory of liability, or dismiss them for lack of personal jurisdiction. Supreme Court concluded that it had jurisdiction over defendants because "the claims asserted arise directly from the Versa Parties' acquisition of BridgeStreet and its operating subsidiaries," and as a result of their "purchasing 100% of BridgeStreet's equity" (id. at 9).
Defendants filed a notice of appeal on June 3, 2020, challenging Supreme Court's finding of personal jurisdiction and partial denial of defendants' motion to dismiss. The appeal was deemed dismissed because defendants failed to perfect within six months.
At the direction of Supreme Court, on July 12, 2021, plaintiff filed a second summary judgment motion. Defendants opposed plaintiff's motion and cross-moved for summary judgment dismissing plaintiff's remaining claims pursuant to CPLR 3212.
In the order on appeal, Supreme Court granted plaintiff summary judgment based on successor and alter ego liability, ruling that "[g]iven their prior admissions in this case, the Versa Parties fail to raise an issue of fact as to whether they are liable under the mere continuation doctrine and the alter ego doctrine" (47 E. 34th St. [NY], L.P. v BridgeStreet Worldwide, Inc., Sup Ct, NY County, Apr. 26, 2022, Borrok, J., index No. 653057/2018 at 2 [2022 order]). Supreme Court also believed that it was precluded from revisiting its previous ownership rulings because defendants failed to perfect [*4]their appeal of the 2019 order. Accordingly, Supreme Court refused to consider the documentary evidence submitted by defendants establishing that neither Versa nor Domus Funding acquired BWW's assets, which defeats plaintiff's successor liability claim. Supreme Court further rejected defendants' "remaining arguments about the mere continuation doctrine" as "law of this case" (id. at 6). Supreme Court found "the Versa Parties" liable as BWW's alter ego because they dominated BWW, failed to observe corporate formalities, "recycled" a new loan to pay themselves, starved BWW, and rendered BWW judgment proof (id. at 6-7).
Consistent with this ruling, Supreme Court also denied defendants' cross-motion seeking dismissal of the claims based on the successor, alter ego, and fraudulent conveyance theories of liability. It also denied defendants' (second) motion to amend their response to the notice to admit, and their motion to amend their answer to assert a standing defense.
On May 2, 2022, defendants filed notices of appeal from Supreme Court's order.[FN2]
Discussion
Generally, "a corporation which acquires the assets of another is not liable for the torts of its predecessor" (Schumacher v Richards Shear Co., 59 NY2d 239, 244 [1983]). There are limited exceptions to this general rule, including the mere continuation theory at issue here, which case law provides can only be asserted against a single corporation (see id. at 245 [successor liability may exist where "the purchasing corporation was a mere continuation of the selling corporation," which "refers to corporate reorganization . . . where only one corporation survives the transaction"]).
A successor liability claim cannot stand where the surviving corporation did not acquire the assets of the selling corporation (see e.g. Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V., 205 AD3d 520, 522 [1st Dept 2022]). Neither defendant herein acquired BWW's assets. The documentary evidence, including the CTA, the ATA, and the Stock Power — none of which plaintiff claims are fabricated — demonstrate that Domus Funding transferred BWW's domestic collateral to nonparty Domus Group and BWW's foreign collateral to nonparty Domus UK. For its part, Versa was not even a signatory to any of the relevant transactions.
Supreme Court did not consider the documentary evidence that completely undermined plaintiff's successor liability claim based on its mistaken belief that it had a "limited factual issue" before it. Pointing to its 2019 order, Supreme Court noted that it had already determined that plaintiff made "a prima facie showing that the Versa Parties completely absorbed BWW's business operations" (2022 order at 2). In the court's view, it was irrelevant that it had denied plaintiff summary judgment, because it had narrowed the issues of fact in the 2019 order "to the location of the business before and after the Foreclosure and the degree to which there was continuity of employees and management[*5]" (id.). Supreme Court further noted that, in the 2019 order, it "rejected the defendants['] remaining arguments about the mere continuation doctrine" which constituted "law of this case" (id. at 6). This was error.
A denial of a summary judgment motion is not an adjudication on the merits (see Metropolitan Steel Indus., Inc. v Perini Corp., 36 AD3d 568, 570 [1st Dept 2007]). Therefore, a party is not relieved from proving its later entitlement to summary judgment merely because it previously made out a prima facie case in motion practice (see Herbold v Labarre, 176 AD3d 1428 [3d Dept 2019]). Additionally, Supreme Court's reference to the "law of this case" is not germane given that the doctrine applies to legal determinations that were previously resolved on the merits (see Baldasano v Bank of N.Y., 199 AD2d 184, 185 [1st Dept 1993]). Supreme Court did not resolve the successor liability claim on the merits in the 2019 order. Furthermore, defendants could not appeal the denial of summary judgment to plaintiff because they were not aggrieved (see Fenton v Consolidated Edison Co. of N.Y., 165 AD2d 121, 125 [1st Dept 1991], lv denied 78 NY2d 856 [1991]).
Nor did Supreme Court, upon the denial of summary judgment, "ascertain what facts are not in dispute or are incontrovertible" and "make an order specifying such facts" pursuant to CPLR 3212(g). Although Supreme Court stated that "[s]pecifically, there are issues of fact regarding the location of the business before and after the Foreclosure and the degree to which there was continuity of employees and management," it did not indicate that these were the sole issues of fact, or invoke CPLR 3212(g).
Supreme Court also erred in relying on certain "admissions" made by defendants that the court found established that Domus Funding acquired BWW and that Versa owned Domus Funding. Plaintiff's notice to admit contained two definitions of "Domus," which rendered ambiguous defendants' response.[FN3] Given the two different definitions of Domus Funding in the notice to admit, the better course would have been for defendants to explain what they meant by their response that "Domus acquired the equity interest in BridgeStreet" instead of perpetuating the confusion (see CPLR 3123[a] ["If the matters of which an admission is requested cannot be fairly admitted without some material qualification or explanation . . . such party may . . . serve a sworn statement . . . admitting the matters with such qualification or explanation"]). Nevertheless, the response is not an admission that Domus Funding owns BridgeStreet given the ambiguity in the notice to admit. Additionally, defendants twice moved unsuccessfully to amend their response to the notice to admit, undermining Supreme Court's finding that they were dilatory in clarifying their responses.
The court also relied on an answer submitted in a Delaware Court of Chancery action in finding that "the Versa Parties" are BWW's successor. While the initial answer in the [*6]Delaware action indicated that Versa owned Domus Funding, it was amended by stipulated order, and the Delaware Court of Chancery permitted Versa to file an amended answer to clarify that "Versa provides management advisory services to certain funds, one of which wholly owns Domus."[FN4]
Finally, Supreme Court relied on the answer in this action of Sean Worker, the former CEO of BWW and one of the individual defendants voluntarily dismissed by plaintiff. Worker's answer states that "Domus owns and controls BridgeStreet," but the term "Domus" is not defined. Moreover, Worker stated in his answer that he "is the CEO of Domus and BridgeStreet," and it is uncontested that Worker joined Domus Group, not Domus Funding, after BWW's assets were transferred to Domus Group.
The court's rejection of defendants' valid arguments discounting these putative admissions was based on a concern that plaintiff would be prejudiced if defendants were permitted to "change the narrative of this case" and "take back admissions made to and relied upon by this Court" (2022 order at 2). That concern was misplaced. Defendants never changed the narrative of the case. The agreements related to the foreclosure and the transfer of BWW's assets to nonparties were provided to plaintiff via discovery exchanged in October 2018. Notably, in plaintiff's August 29, 2019 memorandum of law in support of plaintiff's earlier cross-motion for summary judgment, plaintiff acknowledged that, after the foreclosure, "Domus Group . . . emerged owning all the domestic BWW operating businesses."
On appeal, plaintiff asserts that Supreme Court made binding ownership findings concerning successor liability in connection with its personal jurisdiction ruling in the 2019 order. Plaintiff points to Supreme Court's conclusion that it had personal jurisdiction over defendants based on its finding that the claims arose from "the Versa Parties' acquisition of BridgeStreet and its operating subsidiaries" and from their purchase of "100% of BridgeStreet's equity" (2019 order at 9). However, in the order on appeal, Supreme Court only pointed to its earlier finding that plaintiff "made a prima facie showing that the Versa Parties completely absorbed BWW's business operations" (2022 order at 2). In any event, it is improper to make fact findings in connection with a motion to dismiss pursuant to CPLR 3211, which only challenges the sufficiency of the complaint (see Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dept 1998]; Lavin v Kaufman, Greenhut, Lebowitz & Forman, 226 AD2d 107, 108 [1st Dept 1996]). Bray v Cox (38 NY2d 350 [1976]), relied upon by Supreme Court, does not compel a different result. Bray holds that a prior dismissal for want of prosecution acts as a bar to a subsequent appeal as to "all questions that were presented on the earlier appeal" (id. at 353). Defendants did not (and could not) appeal Supreme Court's denial of summary judgment to plaintiff. Although defendants were certainly aggrieved [*7]by Supreme Court's jurisdictional finding, Bray is inapplicable because defendants do not challenge the existence of personal jurisdiction on this appeal. To the extent Supreme Court's reliance on Bray was proper, this Court has discretion to overlook defendants' failure to perfect their earlier appeal (see e.g. Faricelli v TSS Seedman's, Inc., 94 NY2d 772, 774 [1999] ["an appellate court has the authority to entertain a second appeal in the exercise of its discretion, even where a prior appeal on the same issue has been dismissed for failure to prosecute [under Bray]"]; Aridas v Caserta, 41 NY2d 1059, 1061 [1977] [Appellate Division retains "continuing jurisdiction" to decide the same issue on defendants' second appeal despite dismissal of defendants' first appeal for failure to prosecute]). Such an exercise of discretion is warranted here, where the documentary evidence establishes that defendants are not subject to "mere continuance" successor liability.
Supreme Court further erred in holding defendants liable to plaintiff as BWW's alter ego. Rather, Supreme Court should have granted defendants' cross-motion for summary judgment dismissing the claims based on the alter ego and fraudulent conveyance theories of liability.
Contrary to the court's findings, there are no facts to support alter ego liability on the basis (1) that a new loan "was almost entirely recycled back to the Versa Parties," (2) that defendants "starve[d] BWW without making adequate provision for contingent claims," or (3) that defendants "rendered BWW judgment proof" because they "layered on new secured debt so they could distribute the new debt to themselves and then restricted operating cash flow" (2022 order at 7).
As Supreme Court recognized, to establish a veil piercing claim based on alter ego liability, a plaintiff must show that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018] [internal quotation marks omitted]). However, "domination, standing alone, is not enough" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]). A defendant is entitled to summary judgment dismissing a claim based on alter ego liability absent evidence of any wrongdoing (see Sutton 58 Assoc. LLC v Pilevsky, 189 AD3d 726, 729-730 [1st Dept 2020]).
Plaintiff utterly fails to support this second element of alter ego liability. Even assuming that plaintiff raised an issue of fact as to defendants' dominion and control over BWW (which included evidence that, post-foreclosure, BWW's and BridgeStreet's boards were comprised primarily of Versa individuals), plaintiff's alter ego argument fails. There is no evidence that defendants committed any wrong or injustice against plaintiff by pursuing a statutorily authorized consensual [*8]foreclosure under the facts of this case (see UCC 9-620, Comment 2 ["strict foreclosures should be encouraged and often will produce better results than a disposition for all concerned"]).
Plaintiff's fraudulent conveyance claims similarly fail because there is no evidence that the transfers made in connection with the foreclosure were made for less than fair consideration, or that defendants starved BWW or rendered it judgment proof (see Tower 570 Co., L.P. v Miller & Wrubel P.C., 213 AD3d 590, 591 [1st Dept 2023] [the plaintiff landlord's fraudulent conveyance claims failed because there was "no evidence in the record that those transfers were extraordinary transactions or were made for anything but fair consideration"]).
On their cross-motion for summary judgment, defendants demonstrated, prima facie, that the foreclosure did not involve any fraud or wrongdoing and that there was no transfer for less than fair consideration. When Domus Funding purchased the loan, the loan was already in default. The fact that Domus Funding purchased the loan at 65% of its value reflected the skepticism of the buyer and seller regarding whether BWW would be able to satisfy the loan. BWW continued to be in default despite a period of forbearance and the injection of additional cash. The appraisal report dated January 27, 2014, submitted by defendants, reflected that BWW's businesses were valued at $29.7 million, which was far less than the amount that BWW owed under the loan.
Plaintiff failed to submit any evidence to Supreme Court to rebut defendants' showing. In its appellate brief, plaintiff articulates its unsupported theory of defendants' wrongdoing. Plaintiff asserts that "the Forbearance Agreement gave the Versa Parties the right to siphon cash from the company" in exchange for "a 'new' loan to BWW of $12.5 million, most of which was immediately recycled back to the Versa Parties, with virtually nothing for ongoing operating expenses." Plaintiff further asserts that defendants rendered BWW judgment proof because BWW had "going concern value" and "the Versa Parties layered on new debt to pay themselves." Plaintiff conspicuously skirts explaining the factual basis for these conclusions, never quantifies the amount of the loan that was purportedly "recycled back," and never substantiates BWW's "going concern value" or how it should have been quantified differently than in the appraisal report. Plaintiff merely cites to Schedule 5.2(b) of the Forbearance Agreement, without further elaboration.
There is nothing unusual about a lender entering into a forbearance agreement that injects additional cash into a company for the purpose of paying its debts. Here, Domus Funding loaned BWW more than $4 million in new cash to pay outstanding debts to third parties and agreed to forbear on immediate foreclosure over a five-month period. Domus Funding also effectively capitalized an $8.5 million loan to BWW to pay outstanding fees, expenses, and interest on the loan[*9], leaving the economics of the loan unchanged. The only new amount charged by Domus Funding was for its $250,000 restructuring fee.
Contrary to plaintiff's argument, Schedule 5.2(b) of the Forbearance Agreement does not evidence any wrongdoing. It is a one-page chart entitled "Use of Proceeds" listing certain expenses and the amount allocated to each expense. The Schedule reflects the use of the loan proceeds to pay interest on the loan, Domus Funding's restructuring fee, the prior lenders' restructuring fee, past due rents, partnership catch up payments, New York State sales tax, liability insurance, costs and expenses incurred in the foreclosure, and counsel and financial advisor fees.
Defendants could not have benefited themselves to the extent that Schedule 5.2(b) loan proceeds were paid to third parties to whom BWW owed money, which payments were made to enable BWW to continue to function as an existing corporation. Although Schedule 5.2(b) reflects that Domus Funding received a $250,000 restructuring fee, plaintiff does not argue, let alone demonstrate, that the fee was inflated, or otherwise not earned. Schedule 5.2(b) also reflects that the restructuring fee charged by BWW's prior lenders was $4.5 million, which far exceeds Domus Funding's $250,000 restructuring fee. In any event, Domus Funding loaned BWW more than $4 million in new funds to keep the corporation operational, which was far in excess of its $250,000 restructuring fee.
In sum, after five years of litigation, it was incumbent on plaintiff to, at a minimum, raise an issue of fact that defendants perpetrated a wrong against plaintiff as BWW's alter ego or that defendants participated in a fraudulent conveyance by making transfers for less than fair consideration. Plaintiff has failed to do so. Consequently, defendants' cross-motion for summary judgment dismissing plaintiff's remaining claims against them should have been granted.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 21, 2023

Footnotes

Footnote 1: Plaintiff also initially sued various individuals alleged to have played roles in the relevant transactions, but it later voluntarily discontinued the action against these individual defendants.

Footnote 2: On May 3, 2022, defendants filed Chapter 11 petitions in the Eastern District of Pennsylvania. On May 16, 2022, in violation of the bankruptcy stay, judgment was entered in favor of plaintiff against defendants in the amount of $13,617,170.46. By order entered July 15, 2022, the bankruptcy court modified the automatic stay to permit defendants to pursue the instant appeal.

Footnote 3:Additionally, defendants' response to plaintiff's notice to admit that "Domus is owned, directly or indirectly, by an affiliate of Versa" (emphasis added) is not an admission that Versa owns anything, either directly or indirectly.

Footnote 4: The record herein reflects that the affiliate that owns Domus Funding is nonparty Versa Capital Fund II, LP.